1    **FOLEY & LARDNER LLP**
     ONE MARITIME PLAZA, SIXTH FLOOR
2    SAN FRANCISCO, CA 94111-3409
     TELEPHONE:     415.434.4484
     FACSIMILE:     415.434.4507
3
     LAURENCE R. ARNOLD, CA BAR NO. 133715
4    EILEEN R. RIDLEY, CA BAR NO. 151735
     SCOTT P. INCIARDI, CA BAR NO. 228814
     Attorneys for Respondents and Counter-Petitioners
5    Stanford Hospital & Clinics and
     Lucile Packard Children's Hospital
6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11

12   | **SERVICE EMPLOYEES** | **Case No:  5:08-CV-00213-JF** |
     | **INTERNATIONAL UNION, LOCAL 715,** | |

13            **Petitioner and Counter-**
                   **Respondent,**                  **ANSWER AND COUNTER-**
14                                                   **PETITION TO VACATE**
                                                     **ARBITRATION AWARD**
15           **v.**

16   **STANFORD HOSPITAL & CLINICS and**            **[§ 301 OF THE LABOR MANAGEMENT**
     **LUCILE PACKARD CHILDREN'S**                  **RELATIONS ACT, 29 U.S.C. § 185]**
17   **HOSPITAL,**

18            **Respondents and Counter-**
                   **Petitioners.**
19

20

21          Respondents and Counter-Petitioners Stanford Hospitals & Clinics and Lucile Packard

22   Children's Hospital (collectively the "Hospitals") hereby answer the Petition To Confirm

23   Arbitration Award (the "Petition") filed by Petitioner Service Employees International Union,

24   Local 715 ("Local 715") and petition this Court for an order vacating the Opinion And Decision

25   (the "Award") of arbitrator Thomas Angelo (the "Arbitrator") issued in the arbitration between

26   the Hospitals and Local 715 on November 30, 2007.

     ///
27
     ///
28

SFCA_1142246.3

1

## ANSWER

2    1.    Answering paragraph 1 of the Petition, the Hospitals are without sufficient

3 knowledge or information as to the truth of the allegations contained in said paragraph and, on

4 that basis, deny each and every allegation contained therein.

5

6    2.    Answering paragraph 2 of the Petition, the Hospitals are without sufficient

7 knowledge or information as to the truth of the allegations contained in said paragraph and, on

8 that basis, deny each and every allegation contained therein.

9    3.    Answering paragraph 3 of the Petition, the Hospitals admit the allegations

10 contained in said paragraph.

11

12    4.    Answering paragraph 4 of the Petition, the Hospitals admit that they are signatory

13 to a collective bargaining agreement with "Service Employees International Union, Local 715"

14 (the "Agreement") and that the effective dates of the Agreement are January 20, 2006 through

15 November 4, 2008. The Hospitals further admit that Exhibit A to the Petition is a true and

16 correct copy of the Agreement. Except as so expressly admitted, the Hospitals are without

17 sufficient knowledge or information as to the truth of the allegations contained in said paragraph

18 and, on that basis, deny each and every allegation contained therein.

19    5.    Answering paragraph 5 of the Petition, the Hospitals aver that the Agreement

20 speaks for itself. Except as so averred, the Hospitals deny each and every allegation contained in

21 said paragraph.

22

23    6.    Answering paragraph 6 of the Petition, the Hospitals admit that a grievance was

24 filed alleging that the Hospitals violated provisions of the Agreement when it discharged former

25 bargaining unit member Victor Acosta, that the grievance was processed under the grievance

26 procedure of the Agreement, and that Arbitrator Thomas Angelo was selected as arbitrator.

27 Except as so expressly admitted, the Hospitals are without sufficient knowledge or information

28

SFCA_1142246.3

1  as to the truth of the allegations contained in said paragraph and, on that basis, deny each and
2  every allegation contained therein.

3
4      7.      Answering paragraph 7 of the Petition, the Hospitals admit that a hearing was
5  held before the Arbitrator on November 28, 2007 and that on November 30, 2007 the Arbitrator
6  issued the Award. The Hospitals admit that Exhibit B to the Petition is a true and correct copy of
7  the Award. The Hospitals aver that the Award speaks for itself. Except as so expressly admitted
8  and averred, the Hospitals are without sufficient knowledge or information as to the truth of the
9  allegations contained in said paragraph and, on that basis, deny each and every allegation
10 contained therein.

11     8.      Answering paragraph 8 of the Petition, the Hospitals admit that demand has been
12 made of them to comply with the Award, and that they have refused to comply with the Award.
13 Except as so expressly admitted, the Hospitals are without sufficient knowledge or information
14 as to the truth of the allegations contained in said paragraph and, on that basis, deny each and
15 every allegation contained therein.

16
17     9.      Answering paragraph 9 of the Petition, the Hospitals are without sufficient
18 knowledge or information as to the truth of the allegations contained in said paragraph and, on
19 that basis, deny each and every allegation contained therein.

20     10.     Answering paragraph 10 of the Petition, the Hospitals deny that their refusal to
21 comply with the Award is unjustified and/or in bad faith. Except as so expressly denied, the
22 Hospitals are without sufficient knowledge or information as to the truth of the allegations
23 contained in said paragraph and, on that basis, deny each and every allegation contained therein.

24
25     11.     The Hospitals deny that the relief prayed for by Local 715 should be awarded.

26 ///

27 ///

28                                    3

SFCA_1142246.3

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

## (FAILURE TO STATE A CLAIM)

As a first affirmative defense, the Hospitals assert that the Petition, and each and every cause of action contained therein, fails to set forth facts sufficient to constitute a cause of action upon which relief can be granted against the Hospitals.

## SECOND AFFIRMATIVE DEFENSE

## (LACK OF STANDING)

As a second affirmative defense, the Hospitals assert that the Petition, and each and every cause of action therein, is barred on the grounds that Local 715 lacks standing to assert such claims.

## THIRD AFFIRMATIVE DEFENSE

## (LACK OF LABOR ORGANIZATION STATUS)

As a third affirmative defense, the Hospitals assert that the Petition, and each and every cause of action therein, fails, and is barred, because Local 715 is not a labor organization within the meaning of 29 U.S.C. 1337.

## FOURTH AFFIRMATIVE DEFENSE

## (UNCLEAN HANDS)

As a fourth affirmative defense, the Hospitals assert that the Petition, and each and every cause of action therein, is barred by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

## (ARBITRABILITY)

As a fifth affirmative defense, the Hospitals assert that the Petition, and each and every cause of action therein, fails because the Award decided issues that were not arbitrable under the Agreement.

///

///

4

SFCA_1142246.3

1

## SIXTH AFFIRMATIVE DEFENSE

2

## (AWARD INVALID)

3    As a sixth affirmative defense, the Hospitals assert that the Petition, and each and every

4    cause of action therein, fails because the Award failed to draw its essence from the Agreement

5    and did not represent a plausible interpretation of the Agreement.

6

## SEVENTH AFFIRMATIVE DEFENSE

7

## (AWARD EXCEEDED SUBMITTED ISSUES)

8    As a seventh affirmative defense, the Hospitals assert that the Petition, and each and

9    every cause of action therein, fails because the Award exceeded the issues that were submitted to

10    the Arbitrator for decision.

11

## EIGHTH AFFIRMATIVE DEFENSE

12

## (CONFLICT WITH NLRB DECISIONS)

13    As a eighth affirmative defense, the Hospitals assert that the Petition, and each and every

14    cause of action therein, fails because the Award and the relief sought by Local 715 conflicts with

15    the decision of the National Labor Relations Board in Case No. 32-RC-4504, as modified in

16    Case No. 32-UC-363.

17

## NINTH AFFIRMATIVE DEFENSE

18

## (NLRB JURISDICTION)

19    As a ninth affirmative defense, the Hospitals assert that the Petition and each and every

20    cause of action therein, fails because the issues of whether Local 715 continues to exist as a labor

21    organization within the meaning of the National Labor Relations Act and/or the Labor

22    Management Relations Act, whether it remains a party to the Agreement, whether the servicing

23    agreement between Local 715 and UHW is valid and enforceable, and whether the Weinberg

24    Firm is a valid representative of Local 715, are all issues which determine whether the Hospitals

25    are required to arbitrate grievances with Local 715 under the Agreement, and if so, with what

26    representatives of Local 715. Each of these issues involves questions concerning representation

27    subject to the exclusive jurisdiction of the National Labor Relations Board to be determined by

28

5

ANSWER AND COUNTER-PETITION TO VACATE ARBITRATION AWARD
CASE NO: 5:08-CV-00213-JF

SFCA_1142246.3

1 | that agency.

## TENTH AFFIRMATIVE DEFENSE

## (RESERVATION OF AFFIRMATIVE DEFENSES)

As a ninth affirmative defense, the Hospitals reserve the right to subsequently assert and add affirmative defenses to the Petition, and the part and/or whole thereof, as they become known to the Hospitals.

## COUNTER-PETITION TO VACATE ARBITRATION AWARD

By this Counter-Petition, the Hospitals allege:

## I.    JURISDICTION

1.    To the extent that it may be established that Local 715 is a labor organization, this Counter-Petition arises under, and jurisdiction is conferred on this Court by virtue of, Section 301 of the Labor-Management Relations Act of 1947 (hereinafter "Section 301"). 29 U.S.C. § 185. Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a) (bracketed material supplied).

2.    The Hospitals are California non-profit, public benefit corporations, having their principal offices and places of business in Stanford, California and Palo Alto, California within the territorial jurisdiction of this Court, and are employers in an industry affecting commerce within the meaning of Section 301.

3.    In its Petition To Conform Arbitration Award, filed on or around January 11, 2008, Local 715 alleged that it is a labor organization within the meaning of 29 U.S.C. 1337.

///

6

ANSWER AND COUNTER-PETITION TO VACATE ARBITRATION AWARD
CASE NO: 5:08-CV-00213-JF

SFCA_1142246.3

## II.    THE COLLECTIVE BARGAINING AGREEMENT

4.    The Hospitals are signatory to a collective bargaining agreement (the "Agreement"), with "Service Employees International Union, Local 715".

5.    According to its terms, the Agreement is effective between January 20, 2006 through November 4, 2008 and covers certain employees of the Hospitals (the "Bargaining Unit") as defined in Article 1.3.1 of the Agreement.

6.    Article 1 of the Agreement contains a "recognition clause" in which the Hospitals recognized Local 715 as the "sole and exclusive bargaining representative for the purpose of collective bargaining" of the Bargaining Unit.

7.    The Hospitals recognized Local 715 as the sole and exclusive bargaining representative for purposes of collective bargaining of the bargaining unit pursuant to an order issued by the National Labor Relations Board (the "NLRB" or "Board") in Case No. 32-RC-4504, as modified in Case No. 32-UC-363, true and correct copies of which are attached as Exhibits A and B.

8.    Article 26 of the Agreement sets forth a procedure for processing and adjusting grievances culminating in arbitration. Article 26.1.1 defines a "grievance" as "a claim during the term of this Agreement that the Employer has violated this Agreement . . ." Article 26.7.3 of the Agreement provides that, in the event that a grievance is taken to arbitration, "[t]he arbitrator's authority will be limited to interpreting the specific provisions of this Agreement and will have no power to add to, subtract from, or to change any part of the terms or conditions of this Agreement." Article 26.7.10 further provides that "[t]he arbitrator's authority will be limited to determining whether the Employer has violated the provision(s) of this Agreement. The arbitrator will not have jurisdiction or authority to add to, amend, modify, nullify, or ignore in any way the provisions of this Agreement, and will not make any award that would, in effect, grant the Union or the employee(s) any matters that were not obtained in the negotiation

7
ANSWER AND COUNTER-PETITION TO VACATE ARBITRATION AWARD
CASE NO: 5:08-CV-00213-JF

SFCA_1142246.3

1    process."

2

3        9.        Article 28 of the Agreement is titled "waiver" and states in relevant part that

4    "[t]he Employer and the Union, for the life of this Agreement, each voluntarily and unqualifiedly

5    waives the right, and each agrees that the other will not be obligated to bargain collectively with

6    respect to any subject or matter referred to, or covered in this Agreement, or with respect to any

7    subject or matter not specifically referred to or covered by this Agreement, even though such

8    subject or matter may not have been within the knowledge or contemplation of either or both of

9    the parties at the time they negotiated or signed the Agreement."

10   **III.    THE "SERVICING AGREEMENT" AND THE REPRESENTATION OF SEIU**

11   **LOCAL 715**

12       10.       In or around February, 2006, Local 715 and Service Employees International

13   Union, United Healthcare Workers – West ("UHW") executed a document titled "Servicing

14   Agreement" (the "Servicing Agreement"). The Servicing Agreement provided that UHW's staff

15   would provide certain services to Local 715 relating to its representation of the Bargaining Unit.

16   Specifically, section 4 of the Servicing Agreement provides that UHW is to provide

17   "professional services to Local 715 for its members at the Stanford facility" including

18   "[r]epresentaiton in the grievance procedure and arbitration hearings."

19

20       11.       Section 5 of the Servicing Agreement provides that "Should the Employer

21   challenge or refuse to accept the legitimacy of this Servicing Agreement, the parties [Local 715

22   and UHW] will cooperate in processing the legal actions necessary to its enforcement. (This

23   may include filing an unfair labor practice charge under the name of Local 715)." (Bracketed

24   material supplied.)

25       12.       On August 29, 2006, the Hospitals' attorney, Laurence R. Arnold, of the law firm

26   Foley & Lardner LLP, sent a letter to the executive secretary of Local 715 notifying Local 715

27   that the Hospitals rejected the validity the Servicing Agreement, and would deal only with Local

28                                                            8

SFCA_1142246.3

1  715 and its authorized representatives, and not with representatives of UHW acting pursuant to

2  the rejected Servicing Agreement.

3

4      13.    Beginning in or around early 2007, the Hospitals became aware of information

5  representing that Local 715 had effectively ceased to exist and that its resources were transferred

6  to another local, Local 521 as of March 1, 2007.

7      14.    In response to learning the above information, the Hospitals made multiple

8  written requests of Local 715 seeking information relating to whether Local 715 continued to

9  exist and, if so, the nature of its continued existence. Although it was legally required to respond

10  to such requests under the National Labor Relations Act, Local 715 failed to provide the

11  requested information.

12

13      15.    On or around April 16, 2007 the Hospitals filed a charge designated case number

14  32-CB-6237 with Region 32 of the National Labor Relations Board alleging that Local 715 was

15  in violation of the National Labor Relations Act by its refusal to respond to the Hospitals'

16  information requests.

17      16.    By a letter dated June 14, 2007 from Bruce W. "Rusty" Smith, the Hospitals were

18  informed that the International President of the Service Employees International Union took

19  control of Local 715, and placed it under trusteeship, with Mr. Smith acting as trustee (the

20  "Trustee") effective June 8, 2007.

21

22      17.    On June 18, 2007, Mr. Arnold had a telephone conversation with Barbara J.

23  Chisholm of the law firm Altshuler Berzon LLP (the "Altshuler Firm"). During the telephone

24  conversation, Ms. Chisholm informed Mr. Arnold that she and her firm represented Local 715

25  through the Trustee, in place of the law firm Weinberg, Roger, and Rosenfeld (the "Weinberg

26  Firm"), which had formerly represented Local 715. The content of this conversation was

27  confirmed in a letter sent by Mr. Arnold to Ms. Chisholm dated June 18, 2007.

28

9

SFCA_1142246.3

1    18.    By a letter dated August 1, 2007 addressed to Ms. Chisholm, Mr. Arnold, having

2   received no response to the Hospitals' earlier information requests, requested additional

3   information from Local 715 in light of the appointment of the Trustee, including information

4   concerning employees, officers, and assets of Local 715. The Hospitals received no response to

5   this information request.

6    19.    Since June 18, 2007, notwithstanding Ms. Chisholm's representation that she and

7   the Altshuler Firm represented Local 715, neither she, nor the Altshuler Firm has appeared in

8   any matters involving Local 715 and the Hospitals. Instead, all such appearances have been

9   made by the Weinberg Firm.

10

11   20.    By a letter dated August 24, 2007, Mr. Arnold requested that Ms. Chisholm

12   inform the Hospitals "whether Altshuler Berzon LLP represents SEIU Local 715, and, if so,

13   whether Weinberg, Roger & Rosenfeld is providing representation for SEIU-UHW under the

14   "Service Agreement" entered into between UHW and SEIU, Local 715."

15

16   21.    Having received no response from Ms. Chisholm, Mr. Arnold sent a second letter

17   dated October 5, 2007 requesting that Ms. Chisholm respond to the August 24, 2007 letter.

18   22.    By a letter dated October 9, 2007, Ms. Chisholm advised that she would not

19   respond to the August 24, 2007 letter, which requested clarification of the nature of the legal

20   representation provided by the Weinberg Firm.

21

22   23.    By a letter dated October 16, 2007, Mr. Arnold requested that Ms. Chisholm

23   forward the August 24, 2007 letter to the Trustee for reply. Mr. Arnold further informed Ms.

24   Chisholm that, absent a response from the Altshuler Firm or the Trustee clarifying whether the

25   Weinberg Firm was representing Local 715 directly, or whether it was representing UHW and

26   providing services to Local 715 pursuant to the rejected Servicing Agreement, the Hospitals

27   would conclude that the latter was the case, and would refuse to select arbitrators with the

28

10

SFCA_1142246.3

1  Weinberg Firm or go forward on the record in any arbitration proceeding in which the Weinberg
2  Firm appeared unless and until the Hospitals received assurances that the Weinberg Firm was not
3  providing services pursuant to the rejected Servicing Agreement, but rather was appearing
4  directly on behalf of Local 715.

5
6     24.     On or around October 17, 2007, the Hospitals filed charges designated case
7  numbers 32-CB-6350 and 32-CB-6351 with Region 32 of the National Labor Relations Board
   alleging that Local 715 was in violation of the National Labor Relations Act by its refusal to
8
   respond to the Hospitals' information requests pertaining to the nature of the Weinberg Firm's
9
   representation of Local 715 and the Hospitals' continuing information requests concerning Local
10
   715 continuing viability.
11

12    25.     By a letter dated November 9, 2007, Mr. Arnold reiterated his request for
13  clarification as to the representation provided by the Weinberg Firm directly to the Trustee. The
14  Trustee did not respond to Mr. Arnold's inquiry.

15
16    26.     On or around February 28, 2008, Region 32 issued a complaint against Local 715
   for failing to respond to the Hospitals' information requests based upon the three (3) above-
17
   referenced charges, which complaint is presently pending. A hearing on the complaint has been
18
   scheduled for May 6, 2008.
19

20  **IV.    THE GRIEVANCE AND ARBITRATION PROCEEDINGS**

21    27.     On or around March 17, 2007, a grievance (the "Grievance") was filed
22  purportedly by Local 715 pursuant to the grievance and arbitration provisions of the Agreement.

23
24    28.     The Grievance was filed on behalf of Victor Acosta, a former employee of the
   Hospitals whose employment was terminated on or around March 14, 2007, and alleged that his
25
   termination violated the Agreement, and specifically its "just cause" requirement.
26

27  ///

28
                                          11

SFCA_1142246.3

1  29.  On or around May 16, 2007, Thomas Angelo was selected to act as arbitrator with

2  respect to the Grievance.

3

4  30.  By a letter dated June 26, 2007, Mr. Arnold informed the Arbitrator that the

5  Weinberg Firm was no longer representing Local 715, and that Local 715's new counsel was Ms.

6  Chisholm and the Altshuler Firm.  A copy of this letter was sent to Ms. Chisholm.

7  31.  An arbitration hearing was scheduled for November 28, 2007.  Mr. Arnold

8  appeared at the hearing on behalf of the Hospitals.  W. Daniel Boone of the Weinberg Firm

9  appeared along with Myriam Escamilla purportedly on behalf of Local 715.

10

11  32.  Myriam Escamilla was at all times relevant an employee of UHW, and was not an

12  employee of Local 715.

13  33.  During the hearing, Mr. Boone specifically refused to state whether he was

14  appearing on behalf of Local 715 directly, or whether he was appearing pursuant to the rejected

15  Servicing Agreement.

16

17  34.  During the hearing, the Hospitals specifically stated, and the Arbitrator agreed,

18  that the Arbitrator had no authority to issue a decision as to the validity of the Servicing

19  Agreement, and that such issues were not submitted to him.

20  35.  During the hearing, and over the Hospitals' objections, the Arbitrator determined

21  that Myriam Escamilla was a representative of Local 715, and that Mr. Boone was appearing on

22  behalf of Local 715, that Ms. Escamilla did not object to Mr. Boone's appearance, and indicated

23  that he would proceed to the merits of the Grievance.  The Hospitals requested a stay of the

24  proceedings, which was denied.  The Hospitals refused to participate and the hearing continued

25  *ex parte*.

26  ///

27

28

SFCA_1142246.3

36.     On November 30, 2007, the Arbitrator issued the Award which was titled "Decision and Award."

37.     In the Award, the Arbitrator, based upon his determination that Myriam Escamilla was a representative of Local 715 and had not objected to Mr. Boone's appearance, concluded that Mr. Boone had appeared at the hearing on behalf of Local 715, denied the Hospitals' request for a stay, and upheld the Grievance.

## V.     **GROUNDS FOR VACATUR**

38.     Pursuant to Section 301 of the Labor-Management Relations Act, the Court should vacate the Award on the following grounds:

39.     The Award decided issues that were not arbitrable under the Agreement.

40.     The Award failed to draw its essence from the Agreement and did not represent a plausible interpretation of the Agreement.

41.     The Award exceeded the issues that were submitted for decision.

42.     The Award conflicts with the NLRB's decision in Case No. 32-RC-4504, as modified in Case No. 32-UC-363.

43.     The issues of whether Local 715 continues to exist as a labor organization within the meaning of the National Labor Relations Act and/or the Labor Management Relations Act, whether it remains a party to the Agreement, whether the servicing agreement between Local 715 and UHW is valid and enforceable, and whether the Weinberg Firm is a valid representative of Local 715, are all issues which determine whether the Hospitals are required to arbitrate grievances with Local 715 under the Agreement, and if so, with what representatives of Local 715. Each of these issues involves questions concerning representation subject to the exclusive jurisdiction of the National Labor Relations Board, to be determined by that agency.

SFCA_1142246.3

## VI.    **PRAYER FOR RELIEF**

44.    WHEREFORE, the Hospitals pray that this Court issue an order vacating the Award rendered by the Arbitrator on November 30, 2007, and staying further arbitration proceedings until such time as the representative status of Local 715, the validity of the Servicing Agreement, and the status and capacity of the Weinberg Firm are resolved by the agency with exclusive jurisdiction to do so, that this Court award the Hospitals their costs incurred in this proceeding, and that this Court award such other and further relief that this Court deems proper.

Dated: March 5, 2008

FOLEY & LARDNER LLP
LAURENCE R. ARNOLD
EILEEN R. RIDLEY
SCOTT P. INCIARDI

By:  _____
EILEEN R. RIDLEY
Attorneys for Respondents and Counter-
Petitioners Stanford Hospital & Clinics and
Lucile Packard Children's Hospital

ANSWER AND COUNTER-PETITION TO VACATE ARBITRATION AWARD
CASE NO: 5:08-CV-00213-JF

SFCA_1142246.3

# EXHIBIT A

(1-88)

## UNITED STATES OF AMERICA
## NATIONAL LABOR RELATIONS BOARD

| | |
|---|---|
| **UCSF STANFORD HEALTH CARE**<br><br>                              **Employer**<br><br><br>**and**<br><br>**LOCAL 715, SERVICE EMPLOYEES<br>INTERNATIONAL UNION, AFL-CIO**<br><br>                              **Petitioner** | **TYPE OF ELECTION**<br><br>(*CHECK ONE*)<br><br>_X_ STIPULATED<br><br>____ RD DIRECTED<br><br>____ BOARD DIRECTED<br><br>(AlSO CHECK BELOW WHEN APPROPRIATE)<br><br>____ 8(b)(7) (Expedited)<br><br>**CASE 32-RC-4504** |

## CERTIFICATION OF REPRESENTATIVE

An election has been conducted under the Board's Rules and Regulations. The Tally of Ballots shows that a collective-bargaining representative has been selected. No timely objections have been filed.

As authorized by the National Labor Relations Board, it is certified that a majority of the valid ballots have been cast for

### LOCAL 715, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO

and that it is the exclusive collective-bargaining representative of the employees in the following appropriate unit.

**UNIT:** All full-time and regular part-time non-professional employees of the Employer at its Stanford Hospital, Lucile Salter Packard Children's Hospital, Welsh Road, and Blake-Wilbur Drive, Palo Alto, California locations, performing service and patient care functions, including those occupying those job classifications set forth in Appendix A; **excluding** employees in out-patient clinics, employees at other locations, employees represented by other labor organizations, RNs, physicians, professional employees, technical employees, skilled maintenance employees, business office/office clerical employees, and all other employees, including those set forth in Appendix B, guards and supervisors, as defined in the Act.

Signed at Oakland, California

On the 30th day of November, 1998.

_/s/   James S. Scott_____
Regional Director, Region 32
National Labor Relations Board



**EXHIBIT B**

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

**(Palo Alto, California)**

**UCSF STANFORD HEALTH CARE**

**Employer**

**and**                                                    **Case 32-UC-363**

**LOCAL 715, SERVICE EMPLOYEES**
**INTERNATIONAL UNION, AFL-CIO**

**Petitioner**[1]

## DECISION AND ORDER

Upon a petition duly filed under Section 9(c) of the National Labor Relations Act, as amended, a hearing was held before a hearing officer of the National Labor Relations Board, herein called the Board.

Pursuant to the provisions of Section 3(b) of the Act, the Board has delegated its authority in this proceeding to the undersigned.

Upon the entire record in this proceeding[2], the undersigned finds:

1.      The hearing officer's rulings made at the hearing are free from prejudicial error and are hereby affirmed.

2.      The Employer is a California non-profit corporation engaged in the business of providing acute care and other health care services at its hospitals located in Palo Alto California. During the past 12 months, the Employer has provided services valued in excess of $250,000 and during the same period of time has purchased and received products valued in excess of $50,000 directly from points located outside the State of California. On this basis, I find that the Employer is engaged in commerce within the meaning of the Act and, accordingly, the assertion of jurisdiction is appropriate herein.

3.      The Petitioner is a labor organization within the meaning of Section 2(5) of the Act and represents certain employees of the Employer.

---

[1]    Petitioner's name appears as stipulated to at the hearing.
[2]    Briefs by the parties have been duly considered.

4.      By its petition, the Petitioner seeks to clarify the service and maintenance bargaining unit, herein called the Unit, it currently represents to include about 15 patient admitting representatives (PARs) working in patient care areas.      For the reasons discussed below, I find that said clarification is inappropriate, and accordingly, I will dismiss the petition.

On August 26, 1998, Petitioner filed a representation petition in Case 32-RC-4504 seeking to represent Unit employees employed by the Employer at its Stanford Hospital and Lucile S. Packard Children's Hospital location in Palo Alto, California.  Prior to the election, the parties entered into a series of stipulations regarding the scope of the unit in which the election would be held.  While the parties stipulated to the inclusion of certain specified classifications and the exclusion of certain other specified classifications, the parties also agreed that those PARs "working in locations other than the main admitting departments shall be permitted to vote subject to challenge; the basis of the challenge to be whether such employees are business office clerical employees according to NLRB standards" and should, therefore, be excluded from the Unit.  This group of PARs consisted of about 15 out of a classification containing about 42 employees at the time of the election; the remaining PARs were stipulated to be excluded from the unit.   On November 30, 1998 following an election on November 19, the Petitioner was certified as the exclusive bargaining representative of the employees in the Unit.   The instant petition was filed to resolve the placement of the 15 PARs who work in patient care areas within Stanford Hospital who were allowed to vote subject to challenge.

The Employer operates two acute care hospitals, Stanford Hospital and the Lucile S. Packard Children's Hospital, herein called LPCH, as well as several clinics on its "South Campus" near the campus of Stanford University in Palo Alto, California.   The main business offices serving the Employer's South Campus are located in two buildings approximately three to four blocks apart from each other and about two miles from the two hospitals.  The billing functions for Stanford Hospital are performed at one of these buildings, herein called the Hanover Building, while the billing functions for LPCH are performed at the other building as well as the payroll and accounting functions for the entire South Campus.

All PARs at the South Campus are part of the Registration Department.  Myriam Cabello is the Director of the Registration Department and works out of the main admissions office in Stanford Hospital.  She reports to Larry Smith who is Vice-President of Financial Operations.  Patricia Wilder is the assistant director of patient admitting services and reports to Ms. Cabello.  Two line supervisors report to Ms Wilder.  While PARs work at several different locations throughout the South Campus, they are supervised solely by Registration Department supervisors and managers.   In this regard, all hiring, firing, disciplining, evaluating and assigning of PARs is performed by Registration Department supervisors and managers.

2

As of mid-April 1999, PARs worked at the following locations on the South Campus: Hanover Building (11), Main Admitting-Stanford (7), Main Admitting-LPCH (6.4), Emergency Department (8), Blake Wilbur[3] (2), Ambulatory Surgical Center (1), Ambulatory Treatment Unit (1), MRI (1), Radiology South (2), and Surgical Admission Unit (2).  The Petitioner seeks to include only the PARs working in the following departments:  Emergency Department (ED), Ambulatory Surgical Center (ASC), Ambulatory Treatment Unit (ATU), MRI , Radiology South (R-S), and Surgical Admission Unit (SAU), all of which departments are located in Stanford Hospital.

All PARs perform essentially the same functions regardless of where they work, i.e., gathering demographic and financial data and procuring pre-authorizations from insurance companies for services that the Employer will be providing.  This information is transmitted to the billing department to enable that department to collect for the patient services the Employer provides.  All PARs use computers in their daily work to input the patient data into the Employer's computer system.  All PARs at the South Campus use a software program called Shared Medical Systems (SMS) except for the PARs working in main admitting at LPCH who use Meditech software. The SMS system generates a series of computer screens in which the PARs input the patient data.  There are two separate job descriptions covering PARs at the South Campus; one covering the six PARs at main admitting at LPCH and one for all the rest.  However, these two job descriptions are functionally identical.  Organizationally, the Registration Department is a separate cost center to which all PARs are a part regardless of where they work.

Registration is either scheduled or unscheduled, inpatient or out-patient. A scheduled in-patient or out-patient registration begins with a physician informing the hospital of a scheduled procedure.  Then a PAR, usually at Hanover, as part of the pre-admission procedure, will contact the patient and obtain the necessary demographic and financial data.  Once this data has been obtained, the PAR will contact the insurance company to verify data and obtain authorization to admit the patient for a particular procedure.  On the day of the scheduled procedure, the "pre-admitted" patient presents his/her self to the admitting unit, which is most often the main admitting office or the SAU.  At that point, a PAR reviews and verifies the patient information obtained during pre-admission, has the patient sign a service agreement, copies the patient's insurance card, and for an inpatient creates an identification plate which is used to create an inpatient armband, and then armbands the patient.  For patients who have not been pre-admitted, the registration procedure is essentially the same the only difference being that in that case all registration procedures are performed when the patient arrives at the hospital for treatment.

---

[3]    Blake Wilbur is a separate building just a few minutes walk from both Stanford Hospital and LPCH.

While the functions of all PARs at the South Campus are essentially the same there is some variation in how PARs in each location carry out their functions. For example, the PARs at the Hanover Building are primarily involved in pre-admitting patients by telephone and do not have regular in-person contact with patients while PARs in all other locations have in person contact with patients. In addition, in the Emergency Department, due to federal regulations, the order in which the PARs collect patient data differs somewhat from the typical order in other registration areas. In this regard, a health care professional must conduct a medical screening of each patient before a PAR can collect any billing or financial information from a patient. Thus, prior to the medical screening, the PAR performs only a short registration usually in the lobby outside the door to the emergency room, collecting only patient identifying information. Once the medical screening of a patient is completed, the PAR collects the remaining financial and insurance information often going into the patient care area to talk to the patient. In all other areas, the PARs do not collect any information in an area where patients are actually receiving treatment; instead, the collection is done in a lobby or area outside the areas where the patients actually receive treatment.

The record establishes that contact between Unit employees and PARs is minimal and incidental to the job functions of the PARs. In Hanover pre-admitting, Blake Wilbur, Radiology South, Stanford and LPCH main admitting, for example, no Unit employees are regularly present. Some bargaining unit employees regularly work in the Emergency Department and PARs working in that department do have some regular contact with some Unit employees. However, the ED PARs have much more contact with health care professionals such as nurses and nurse practitioners than Unit employees[4]. The record also establishes that PARs in the SAU have some contact with Unit employees who work near them.

While there is some contact between PARs and Unit employees in some locations, there is no evidence of interchange between PARs and bargaining unit employees in any locations. There is no evidence of either temporary or permanent transfers between PARs and bargaining unit employees. Further, there is no evidence that bargaining unit employees have ever substituted for PARs or vice versa. However, there is substantial evidence that PARs in some locations regularly fill in or substitute for PARs in certain other locations. For example, based on workflow, there is frequent substitution of PARs who work at Stanford main admitting which PARs are not being sought and those who work at Radiology South. These departments are located a short distance from each other on the main floor of Stanford Hospital. In this regard, PARs from Radiology South often work in Stanford main admitting during the first week of the month

---

[4]    For example, the PAR on the graveyard shift in the ED has frequent contact with nurses and nurse supervisors regarding the placement of patients in rooms and the order of patient flow into the emergency room. However, neither the nurse supervisor nor any non-registration employee directs the PARs as to how to perform PAR functions.

when patient volume is particularly high. Additionally, PARs from Stanford main admitting go into areas with only one PAR, such as ASC, ATU and MRI, on a daily basis to cover lunch periods, vacations and sick calls. On Friday afternoons, a PAR from main admitting goes into SAU to do registration because the SAU has no PAR assigned after 1:30 that day although the department is open until 5 p.m. Emergency Department PARs occasionally fill in for PARs in other areas although PARs from other areas only "infrequently" fill in for ED PARs. In departments where only one PAR is assigned, such as ASC, ATU and MRI, the PARs assigned to these departments do not substitute for PARs in other areas although PARs from other areas regularly cover for them. The Employer has involuntarily transferred PARs from one department to another and has begun a program to cross-train all PARs so that eventually all PARs will be qualified to work in every department where PARs work.

Of all the work areas where PARs work in Stanford Hospital, only the ED has its own break room which is open to all employees who work in that area including PARs. All employees have access to the Stanford Hospital cafeteria. Once every six months, the Registration Department holds a department wide staff meeting. Once a year, the Registration Department holds a "National Admitting Workers Week" when the department schedules a series of events for all Registration Department employees. The Registration Department also holds its own Christmas party each year. PARs do not wear uniforms.

## ANALYSIS

The only issue raised herein is whether it is appropriate to clarify the Unit to include those PARs who perform their duties in patient care areas into the existing Unit even though these PARs constitute only a small part of the total number of employees in the PARs classification at the South Campus, the rest of whom the parties agreed to exclude from the Unit.

In deciding that the PARs cannot be clarified into the Unit and that the petition must be dismissed, I am guided by the Board's decision in United Parcel Service, 325 NLRB No. 21 (1997). There the petitioning union sought to include into a nationwide bargaining unit only a portion of the employees in a job classification while excluding employees in the same position with similar duties who worked at other facilities throughout the country. The Board declined to clarify the unit as requested and dismissed the petition since to do otherwise would not "...promote...stable and efficient labor relations." Id. sl. op. at 1.

First and foremost, as demonstrated above, the PARs who are sought to be included in the existing unit have a close community of interest with the PARs who have already been excluded from the Unit and thus share with them a separate group identity. In that regard, as discussed above, the record unequivocally establishes that regardless of where a PAR works, each PAR performs essentially the same function as any other PAR on the South Campus,

i.e., collects demographic and financial information from patients as part of the registration process and except for the PARs working in LPCH have the same job description.[5] In addition, all PARs have patient contact in performing this function, either by phone or in person. Further, there is substantial interchange between PARs working in the various departments on the South Campus but no interchange between PARs and non-PARs employees who work in the departments with the PARs. Finally, PARs are only supervised by Registration Department managers and supervisors and they are not supervised by the supervisors or managers in the departments where they work.

The Petitioner contends that the PARs in patient care areas should be added to the Unit because they share a sufficient community of interest with Unit employees who also work in the patient care areas. In support of this contention, the Petitioner cites a number of factors, including geographical proximity to Unit employees, day-to-day interaction with Unit employees, similarity in terms and conditions of employment between PARs and Unit employees, integration of functions with Unit employees and common supervision with Unit employees by nursing department supervisors at some locations.[6] However, the record as a whole does not support the Petitioner's contention that the community of interest between the 15 PARs and Unit employees is such that they must be included in the existing unit.

In that regard, the record fails to establish that sought after PARs have anything more than a minimal amount of work-related contact with Unit employees, all of which is incidental to their primary registration function. The mere presence of Unit employees in some departments where the sought after PARs work is not sufficient to establish the community of interest to require the inclusion of the PARs in this unit. While some PARs work in the Hanover Building, some distance from Stanford Hospital, other excluded PARs work in main admitting in Stanford Hospital not far from where the sought after PARs work. While the registration function is, of necessity, totally integrated with other hospital functions, including those performed by Unit employees, this is to be expected in any hospital and obviously does not require that all non-supervisory employees be included in the same unit. Furthermore, there is no evidence that the duties of the sought after PARs are similar to those of any bargaining unit employees. And, contrary to the Petitioner's assertion, the record does not establish that the sought after PARs share any common supervision with bargaining unit employees.

---

[5]     As noted above, while there is a separate job description for PARs working in main admitting at LPCH, it is functionally the same as the job description covering the rest of the PARs.
[6]     Petitioner also contends that excluded PARs such as those working in the Hanover Building do not share the same working conditions as the PARs working in patient care areas because the Hanover PARs do not have in-person patient contact. Contrary to the Petitioner's contention, the fact that some PARs have in person contact with patients and while other PARs only have contact with patients over the phone is not significant since they all have substantial patient contact, especially in light of the fact that some of the excluded PARs, namely the Stanford and LPCH PARs, have substantial in-person patient contact.

6

Finally, Petitioner argues that it is not inappropriate to split the sought after PARs from the rest of the PARs who have been excluded from the Unit, in order to include them in the Unit because the Unit already contains some but not all employees in the classification of office assistant. However, while the record establishes that prior to the election the parties agreed to include some employees in the office assistant classification in the Unit while excluding others, the record as a whole clearly establishes that the classification of office assistant is entirely different than the PAR classification and the splitting of that classification does not in any way justify the splitting of the PAR classification. In that regard, unlike the homogeneous PAR classification, the office assistant classification is a "generic" classification containing positions with a multitude of different job descriptions, performing a variety of job functions in many different departments under different supervision. In fact, there are no office assistant positions with the same title which are split between Unit and non-Unit employees. Moreover, whatever split exists in the office assistant position between Unit and non-Unit employees resulted from a pre-election agreement between the parties, and does not in any way bind me. Mid-West Abrasive Co., 145 NLRB 1665 (1964); Macy's San Francisco, 120 NLRB 69, 71 (1958) (The Board is not bound by a unit resulting from a consent election conducted pursuant to a unit stipulated by the parties rather than one determined by the Board.)

In sum, I conclude that it is inappropriate to include the PARs who work in patient care areas in the existing service and maintenance unit because they have a close community of interest and a distinctly separate identity along with the rest of the employees in the PAR classification at the South Campus whom the parties have agreed to exclude from the unit but who perform similar functions. Accordingly,

**IT IS HEREBY ORDERED** that the petition in this matter be, and it hereby, is dismissed.

## RIGHT TO REQUEST REVIEW

Under the provisions of Section 102.67 of the Board's Rules and Regulations, a request for review of this Decision may be filed with the National Labor Relations Board, addressed to the Executive Secretary, 1099 14th Street, N.W., Washington, DC 20570. This request must be received by the Board in Washington by July 6, 1999.

Dated at Oakland, California this 21st day of June, 1999.

James S. Scott, Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, California 94612-5211

32-1173

420-0642-0000
440-6750-3350-6700