1

**FOLEY & LARDNER LLP**
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3409
TELEPHONE:    415.434.4484
FACSIMILE:    415.434.4507

2

3

LAURENCE R. ARNOLD, CA BAR NO. 133715
LARNDOLD@FOLEY.COM
EILEEN R. RIDLEY, CA BAR NO. 151735
ERIDLEY@FOLEY.COM
SCOTT P. INCIARDI, CA BAR NO. 228814
SINCIARDI@FOLEY.COM

4

5

6

Attorneys for Respondents And Counter-Petitioners
Stanford Hospital & Clinics
and Lucile Packard Children's Hospital

7

8

9    UNITED STATES DISTRICT COURT

10    NORTHERN DISTRICT OF CALIFORNIA

11

12

13

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715, | Case No:  5:08-CV-0213 JF |
| Petitioner And Counter-Respondent, | STANFORD HOSPITAL AND CLINICS' AND LUCILE PACKARD CHILDREN'S HOSPITAL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS OR DEFENSES |
| vs. | |
| STANFORD HOSPITAL AND CLINICS AND LUCILE PACKARD CHILDREN'S HOSPITAL, | [FED. R. CIV. P. 56] |
| Respondents And Counter-Petitioners. | Date:      August 29, 2008 |
| | Time:      9:00 A.M. |
| | Dept:      Ctrm. 3, 5th Floor |
| | Judge:      Hon. Jeremy Fogel |

14

15

16

17

18

19

20

21

22

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................ 1

II.     STATEMENT OF FACTS ............................................................................................ 2

    A.      The Certification And Collective Bargaining Agreement ....................................... 2

    B.      Beginning In Early 2006, The Hospitals Were Presented With Increasing
           Evidence That Local 715 Had Ceased To Exist And/Or Had Transferred
           Its Representative Duties To UHW ......................................................................... 3

           (1)    In Late February, 2006 Local 715 Enters Into A "Servicing
                    Agreement" With UHW ................................................................................ 4

           (2)    In March, 2006, UHW Begins Carrying Out Representational
                    Functions Formerly Performed By Local 715 ............................................. 4

           (3)    Between March and May, 2006, UHW Employees Continue To
                    Carry Out Local 715's Functions, And Evidence Surfaces That
                    Local 715 Was Defunct ............................................................................... 4

           (4)    The Hospitals Refuse To Deal With UHW Employees ............................... 5

           (5)    SEIU Implements A Plan To Reorganize SEIU Locals ............................... 6

            (6)    The Hospitals Conclude That The Servicing Agreement Is Not
                    Legitimate. ................................................................................................... 6

           (7)    In Early 2007, Local 715 Prepares To Disband Itself And Its
                    Representatives Confirm That It Has Ceased To Exist ............................... 6

           (8)    The Hospitals Cease Remitting Dues To "Local 715" ............................... 8

           (9)    In June, 2007, "Local 715" Is Purportedly Placed Under
                    Trusteeship, And The Trustee Appoints New Counsel ............................... 8

           (10)   Weinberg Attorneys Continue To Act On Behalf Of "Local 715",
                   But Refuse To Clarify Their Representative Capacity ............................... 9

    C.      The Hospitals Refuse To Arbitrate The Acosta Grievance Absent
           Clarification Of The Nature Of The Weinberg Firm's Representation Of
            "Local 715" ........................................................................................................ 10

    D.      The Arbitrator's Decision ................................................................................... 11

    E.      The Petition And Counter-Petition ...................................................................... 11

III.    DISCUSSION ............................................................................................................ 12

    A.      Legal Standards Applicable To Summary Judgment Motions ............................. 12

SFCA_1424410.4

B.   The Hospitals Were Not Required To Arbitrate The Acosta Grievance, And The Award Cannot Be Enforced, Because "Local 715" Has Effectively Ceased To Exist ........................................................ 12

    (1)   SEIU Adopted And Implemented A Plan That Expressly Called For The Dismemberment And Dissolution Of Local 715 ...................... 13

    (2)   The Bulk Of Local 715's Former Membership And Functions Were Merged Into Local 521 ............................................................... 14

    (3)   Local 715's Private Hospital Members And Functions Were Transferred To UHW ............................................................................ 14

        a)   **Local 715 Assigned Its Representational Functions To UHW** ............................................................................................... 14

        b)   **UHW Began Receiving Dues Deducted From Bargaining Unit Members Paychecks** ...................................... 15

        c)   **Bargaining Unit Employees Were Asked To Agree To Change Their Union Affiliation To UHW** ............................... 15

        d)   **President Stern Ordered The "Reorganization" Of Local 715 Into UHW, And Chief Shop Steward Robert Rutledge Admitted That Local 715 Had Ceased To Exist** ................................................................................................. 15

        e)   **"Local 715" Is Represented By UHW's Legal Counsel** ........... 16

        f)   **UHW Claims To Represent The Bargaining Unit** .................. 16

    (4)   As Local 715 Has Effectively Ceased To Exist, The Hospitals Had No Obligation To Arbitrate The Acosta Grievance, And It Cannot Be Enforced Against Them ....................................................................... 17

C.   Whether Or Not Local 715 Continues To Exist, The Hospitals Are Not Required To Participate In Grievance And/Or Arbitration Proceedings With Representatives Of UHW Because UHW Is Not The Certified Representative And The Servicing Agreement Is Not Valid ................................ 17

D.   The Arbitrator's Award Was Invalid And Should Be Vacated ...................... 19

    (1)   "Local 715" Failed To Respond To The Hospitals' Counter-Petition ...................................................................................................... 19

    (2)   The Arbitrator Decided Issues That Were Not Arbitrable Under The CBA ................................................................................................... 19

    (3)   The Award Exceeded The Issues That Were Submitted For Decision ................................................................................................... 20

    (4)   The Award Failed To Draw Its Essence From The CBA And Did Not Represent A Plausible Interpretation Of The CBA ........................... 21

    (5)   The Award Conflicts With The Certification ...................................... 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E.    If The Court Decides That These Cases Present A Representational Issue On Which It Should Not Rule, It Should Issue A Stay........................................ 24

IV.    CONCLUSION.................................................................................................... 25

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO:  5:08-CV-0213 JF

SFCA_1424410.4

1

## <u>TABLE OF AUTHORITIES</u>

2                                                                                      <u>Page</u>

3                            FEDERAL CASES

4    *A. Dariano & Sons, Inc. v. District Council Of Painters No. 33*,
5        869 F.2d 514 (9th Cir. 1989) ..................................................................24

6    *Anderson v. Liberty Lobby, Inc.*,
         477 U.S. 242 (1986).............................................................................12
7
    *AT&T Technologies, Inc. v. Communications Workers Of America*,
8        475 U.S. 643 (1986)............................................................................20

9    *Brooks v. National Labor Relations Board*,
10       348 U.S. 96 (1954)..............................................................................12

11   *California Pacific Medical Center v. Service Employees International Union,
        United Healthcare Workers – West*,
12       No. C 06 4685 SC, 2007 WL 81906 (N.D.Cal. 2007)............................................21

13   *Carpenters' Local Union No. 1478 v. Stevens*,
         743 F.2d 1271 (9th Cir. 1984) ...............................................................24
14
15   *Celotex Corporation v. Catrett*,
         477 U.S. 317 (1986)............................................................................12

16   *District Council Of Ironworkers v. Swinerton & Walberg, Inc.*,
17       752 F.Supp. 344 (1990) ......................................................................24

18   *Doyle v. Raley's Incorporated*,
         158 F.3d 1012 (9th Cir. 1998) ...............................................................20
19
20   *Edward Hines Lumber Company v. Lumber And Sawmill Workers Local No. 2588*,
         764 F.2d 631 (1985) ...................................................................... 21-22

21   *Goad Company*,
22       333 NLRB 677 (2001) .........................................................................18

23   *Hotel Employees, Restaurant Employees Union, Local 2 v. Marriott Corporation*,
         961 F.2d 1464 (9th Cir. 1992) ...............................................................24
24
    *International Brotherhood Of Boilermakers, Iron Ship Builders, Black-Smiths, Forgers
25       And Helpers, AFL-CIO v. Local Lodge D354*,
26       897 F.2d 1400 (7th Cir. 1990) ...............................................................13

27   *Local No 3-193 International Wood-Workers Of America v. Ketchikan Pulp Company*,
         611 F.2d 1295 (1980).........................................................................24
28

-iv-

*Lorber Industries Of California v. Los Angles Printworks Corporation*,
  803 F.2d 523 (9th Cir. 1986) ........................................................................13

*Major League Baseball Players Association v. Garvey*,
  532 U.S. 504 (2001)........................................................................................22

*Matushita Electric Industrial Company v. Zenith Radio Corporation*,
  475 U.S. 574 (1985) ........................................................................................12

*Medo Photo Supply Corporation v. National Labor Relations Board*,
  321 U.S. 678 (1944) ........................................................................................12

*Moruzzi v. Dynamics Corporation Of America*,
  443 F.Supp. 332 (S.D.N.Y. 1977) ............................................................13, 24

*Nevada Security Innovations, Ltd.*,
  341 NLRB 953 (2004) .....................................................................................12

*Pacific Motor Trucking Company v. Automotive Machinists Union*,
  702 F.2d 176 (9th Cir. 1983) ..........................................................................22

*Phoenix Newspapers, Inc. v. Phoenix Mailers Union 752*,
  989 F.2d 1077 (9th Cir. 1993) ........................................................................20

*Pioneer Inn Associates v. National Labor Relations Board*,
  578 F.2d 835 (9th Cir. 1978) ..........................................................................12

*Sherwood Ford, Inc*,
  188 NLRB 131 (1971) .....................................................................................19

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ..........................................................................21

*Stead Motors Of Walnut Creek v. Automotive Machinists Lodge No. 1173*,
  886 F.2d 1200 (9th Cir. 1989) ........................................................................22

*United Steelworkers Of America v. Enterprise Wheel And Car Corporation*
  ("*Enterprise Wheel*"), 363 U.S. 593 (1960)...................................................21


**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

29 U.S.C.,
  Section 160(b).................................................................................................21
  Section 185 (Labor Management Relations Act, Section 301)........................24

Federal Rules of Civil Procedure,
  Rule 12(a)(1)(B)..............................................................................................19

SFCA_1424410.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Rule 56 ................................................................................................................................12
Rule 56(c) ...........................................................................................................................12

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO: 5:08-CV-0213 JF

SFCA_1424410.4

**NOTICE OF MOTION AND MOTION**

TO THE PETITIONER AND COUNTER-RESPONDENT AND ITS ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 29, 2008 at 9:00 AM, or as soon thereafter as counsel may be heard by the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, 5th Floor, Courtroom 3, Respondents and Counter-Petitioners Stanford Hospital & Clinics and Lucile Packard Children's Hospital (the "Hospitals") will and hereby do move the Court for summary judgment or, in the alternative, summary adjudication of claims or defenses pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 (the "Motion").

By this Motion, the Hospitals seek an order by this Court denying the Petition of Service Employees International Union, Local 715 ("Local 715"), granting the Hospitals' Counter-Petition, and holding that the Hospitals are entitled to judgment as a matter of law on the grounds that the Hospitals cannot be compelled to arbitrate the matter at issue, or to obey any award issued with respect to such matter, because Local 715 has ceased to exist or, in the alternative, that the entity or persons who have sought to arbitrate with the Hospitals are not Local 715 and therefore lack standing to require the Hospitals to arbitrate. The Hospitals further seek an order declaring Arbitrator Angelo's November 30, 2007 award invalid.  This Motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations of Laurie J. Quintel, Laurence R. Arnold, and Scott P. Inciardi, all pleadings and papers on file in this action and upon such other matters as may be presented to the Court at the time of the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT**

This action concerns the issue of whether the respondents and counter-petitioners, Stanford Hospital & Clinics and Lucile Packard Children's Hospital (the "Hospitals") were required to participate in arbitration with the petitioner, Service Employees International Union, Local 715 ("Local 715") pursuant to a collective bargaining agreement (the "CBA").  In April, 2007, Local 715 demanded that the Hospitals arbitrate a grievance involving a former Hospital

1

SFCA_1424410.4

1    employee named Victor Acosta (the "Acosta Grievance").  The Hospitals did not dispute that the

2    grievance was substantively arbitrable.  However, in the months prior to the demand for

3    arbitration, the Hospitals had become aware of evidence that, as of approximately March 1,

4    2007, Local 715 had ceased to exist as a result of a plan by Service Employees International

5    Union ("SEIU" or the "International") to reorganize California local unions.  The Hospitals

6    further came to believe that the attorneys who were seeking to arbitrate the Acosta Grievance,

7    although they claimed to represent "Local 715", were actually retained by another SEIU local

8    known as "UHW."  Accordingly, the Hospitals refused to arbitrate the grievance.  Arbitrator

9    Angelo, however, completely ignoring the boundaries of his authority, which he had previously

10    acknowledged, issued an award finding that the Hospitals violated the CBA.  The Arbitrator's

11    award, as a matter of law, cannot be enforced, and should be vacated.

12    **II.    STATEMENT OF FACTS**

13    The following facts are material to the issues in this case and Motion and cannot be

14    genuinely disputed.

15    **A.    The Certification And Collective Bargaining Agreement**

16    In 1998, after a National Labor Relations Board (the "Board")-conducted election, the

17    Board issued an order certifying "Local 715, Service Employees International Union, AFL-CIO"

18    as the "exclusive collective bargaining representative" of a unit of Hospital employees described

19    in the order (the "Certification")[1].  [Declaration of Laurence R. Arnold In Support Of Motions

20    ("Arnold Decl.") ¶ 2-3 & Exh. A.]  Pursuant to the Certification, the Hospitals recognized Local

21    715 as the exclusive bargaining representative and subsequently negotiated a series of collective

22    bargaining agreements.  [Arnold Decl. ¶ 4.]  The current collective bargaining agreement (the

23    "CBA") became effective on January 20, 2006, and is scheduled to expire on November 4, 2008.

24    [Id.] Article 1.1 of the CBA states that the CBA "is made and entered into between Stanford

25    Hospital and Clinics (SHC) and Lucile Packard Children's Hospital (LPCH) . . . and the Service

26    Employees International Union, Local 715, AFL-CIO, CLC (hereinafter referred to as

27

28    _____

[1] Acosta was an employee within the relevant unit.

2

SFCA_1424410.4

"Union")."  [Arnold Decl. ¶ 4-6 & Exh. B.]  Article 1.3.1 of the CBA contains a "Recognition Clause," which states that, pursuant to the Board's Certification, "the Employer recognizes the Union, as the sole and exclusive representative for the purpose of collective bargaining" with respect to Bargaining Unit employees.  [Id.]

Article 26 of the CBA contains a grievance and arbitration procedure through which alleged violations of the CBA may be challenged.  [Arnold Decl. Exh. B.]  Article 26.2.1 of the CBA states that "The Union" (i.e. Local 715) "will have the right to present grievances under this procedure on behalf of an individual employee, on behalf of a group of employees, or on behalf of itself as a Union grievance."  [Id.]  Article 26.2.3.e provides that "only the Union" (Local 715) "may appeal a grievance to arbitration."  [Id.]  Article 26.7.8 states that arbitration proceedings "will be closed unless the parties mutually agree otherwise in advance and in writing."  [Id.]

Article 26 places limits on the power of the arbitrator to decide disputes under the CBA. Specifically, Article 26.7.3 of the Agreement provides that, "[t]he arbitrator's authority will be limited to interpreting the specific provisions of this Agreement and will have no power to add to, subtract from, or to change any part of the terms or conditions of this Agreement."  [Id.] Article 26.7.10 further provides that "[t]he arbitrator's authority will be limited to determining whether the Employer has violated the provision(s) of this Agreement.  The arbitrator will not have jurisdiction or authority to add to, amend, modify, nullify, or ignore in any way the provisions of this Agreement, and will not make any award that would, in effect, grant the Union or the employee(s) any matters that were not obtained in the negotiation process."  [Id.]

### B.    Beginning In Early 2006, The Hospitals Were Presented With Increasing Evidence That Local 715 Had Ceased To Exist And/Or Had Transferred Its Representative Duties To UHW

Beginning in early 2006, Local 715 underwent changes that, as of at least March, 2007, effectively extinguished it as an ongoing operation.  These events were made known to the Hospitals in a piecemeal fashion, eventually causing the Hospitals to conclude that Local 715

SFCA_1424410.4

1  had ceased to exist, and improperly had attempted to transfer its bargaining rights to UHW.[2]

2       **(1)     In Late February, 2006 Local 715 Enters Into A "Servicing**

3            **Agreement" With UHW**

4       Between February 18 and February 20, 2006, shortly after the CBA became effective, Sal

5  Roselli, the President of UHW, and Kristy Sermersheim, the Executive Secretary of Local 715,

6  executed a three (3) page document titled "Servicing Agreement" (the "Servicing Agreement").

7  [Arnold Decl. ¶ 36 & Exh. CC; Declaration of Scott P. Inciardi In  Support Of Motions

8  ("Inciardi Decl.) Exh. EE.]  The Servicing Agreement provided that UHW would provide certain

9  enumerated "professional services" to Local 715 at no cost.  [Id.]  By its terms, the Servicing

10 Agreement was to be effective as of March 1, 2006.  [Id.]  The Servicing Agreement called for

11 Local 715 to resume direct representation of the Bargaining Unit and for Local 715 and UHW to

12 seek enforcement of the Servicing Agreement in the event the Hospitals rejected it.  [Id.]

13      **(2)     In March, 2006, UHW Begins Carrying Out Representational**

14           **Functions Formerly Performed By Local 715**

15      On February 28, 2006, Greg Pullman, Local 715's Staff Director, informed Laurie

16 Quintel, the Hospitals' Director of Employee/Labor Relations, that she should work with a UHW

17 employee named Ella Hereth in connection with the settlement of grievances and unfair labor

18 practice charges.  [Quintel Decl. ¶ 9.]  Around the same time, another UHW employee told Ms.

19 Quintel that UHW would be taking over representation for the Hospitals.  [Quintel Decl. ¶ 10.]

20      **(3)     Between March and May, 2006, UHW Employees Continue To Carry**

21           **Out Local 715's Functions, And Evidence Surfaces That Local 715**

22           **Was Defunct**

23      Between March and May, 2006, the functions that had formerly been carried out by Local

24 715 personnel were carried out exclusively by UHW employees.  UHW employees began

25

26 _____

[2] The facts pertaining to the continued existence of Local 715 outlined below are discussed in
27 greater detail in the Hospitals' motions for summary judgment in Case Nos. 5:08-CV-00216 JF,
   5:08-CV-01726 JF, and 5:08-CV-01727 JF, which are being filed concurrently in those cases and
28 are incorporated herein by this reference.

SFCA_1424410.4

1   submitting all grievances on UHW letterhead.  [Quintel Decl. ¶ 15 & Exh. D.]  The Hospitals

2   were instructed to direct all correspondence to UHW employees.  [Quintel Decl. ¶ 14 & Exh. C.]

3   At the same time, the UHW employees appointed to "service" the Hospitals denied that they

4   worked for Local 715.  [Quintel Decl. ¶ 20 & Exh. H.]  Mr. Pullman confirmed that UHW

5   employees were "handling ***all representation matters*** for SEIU Local 715."  [Quintel Decl. ¶ 20

6   & Exh. H (emphasis supplied).]

7           Between March and May, 2006, the Hospitals also received communications from the

8   law firm Weinberg Roger & Rosenfeld (the "Weinberg Firm" or "Weinberg"), which had

9   historically acted as Local 715's attorneys suggesting that Local 715 was no longer acting as the

10  bargaining representative.  On or around March 28, 2006, W. Daniel Boone of the Weinberg

11  Firm wrote a letter to Laurence R. Arnold, an attorney with the law firm of Foley & Lardner

12  LLP, which represents the Hospitals, regarding a pending grievance.  In the subject line of his

13  letter, Mr. Boone referred to "United Healthcare Workers – West (formerly SEIU, Local 715)."[3]

14  [Arnold Decl. ¶ 26 & Exh. S.]

15          In early April, 2006, Ms. Quintel received a telephone call from Phyllis Willett, who

16  identified herself as an employee of UHW and stated that when the Hospitals remitted union

17  dues, they needed to provide the social security numbers of the relevant employees to help UHW

18  identify them.  [Quintel Decl. ¶ 16.]  Ms. Quintel received a similar request from William A.

19  Sokol of the Weinberg Firm "on behalf of SEIU United Healthcare Workers West." [Quintel

20  Decl. ¶ 17 & Exh. E.]

21                      **(4)    The Hospitals Refuse To Deal With UHW Employees**

22          In May and June, 2006, due to the mounting evidence that UHW was actually assuming

23  all of Local 715's former functions, the Hospitals made clear that they did not consent to any

24  transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not deal with

25  employees of UHW.  [Quintel Decl. ¶ 19 & Exh. G.]  In June, 2006, Hospitals also requested

26

27  ────────────────
    [3] When questioned about this reference, Mr. Boone wrote a letter stating that it was in error.
    However, the subject line of that letter continued the use of the reference.  [Arnold Decl. ¶ 25-28

28  & Exh. R-W.]

---

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO:  5:08-CV-0213 JF

SFCA_1424410.4

1  information from Local 715 regarding the organization's current status and the role of UHW,

2  given the indications that Local 715 had abandoned, or was abandoning, its status as certified

3  representative.  [Arnold Decl. ¶ 32 & Exh. Z.]

**(5)    SEIU Implements A Plan To Reorganize SEIU Locals**

5        On June 9, 2006, SEIU issued a document titled "Hearing Officers' Joint Report And

6  Recommendations" (the "Joint Report").  The Joint Report outlined a plan to reorganize various

7  SEIU Locals (the "SEIU Reorganization Plan").  As a part of the plan, the bulk of Local 715's

8  membership and operations were to be absorbed into a new local, eventually designated Service

9  Employees International Union, Local 521 ("Local 521").  [Inciardi Decl. Exh. T p. 40.]  The

10  plan also called for UHW to take over the representation of Private Hospitals, including the

11  Hospitals, formerly represented by Local 715.  [Inciardi Decl. Exh. T p. 65.]  The SEIU

12  Reorganization Plan was approved and adopted by SEIU on June 11, 2006.  [Quintel Decl. ¶ 23

13  & Exh. K at p. 4.]

**(6)    The Hospitals Conclude That The Servicing Agreement Is Not**

**Legitimate.**

16        In mid-August, the Hospitals requested and received copies of the Servicing Agreement.

17  [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 35-38 & Exh. BB-EE.]  Upon review, it was

18  apparent that the document did not fully or accurately describe the relationship between Local

19  715 and UHW, given the evidence that UHW had assumed all of Local 715's representational

20  functions.  Accordingly, in a letter dated August 29, 2006 addressed to Ms. Sermersheim, Mr.

21  Arnold stated that the Hospitals did not recognize the Servicing Agreement, and would not deal

22  with employees of UHW acting pursuant to it.  [Arnold Decl. ¶ 38 & Exh. EE.]

**(7)    In Early 2007, Local 715 Prepares To Disband Itself And Its**

**Representatives Confirm That It Has Ceased To Exist**

25        On January 2, 2007, International President Stern issued an "Order Of Reorganization" to

26  various SEIU locals, including Local 715, which instructed that Local 715 be "reorganized" into

27  Local 521 and UHW as soon as practicable.  [Inciardi Decl. Exh. U.]  On January 31, 2007,

28  Robert W. Rutledge, Chief Steward for the Bargaining Unit, stated in an e-mail that, "SEIU 715

6

SFCA_1424410.4

1   no longer exists and a service agreement between the former 715 and UHW has been in place

2   since March first of 2006." [Quintel Decl. ¶ 28 & Exh. O.]  At a meeting with Ms. Quintel on or

3   around February 2, 2007, Mr. Rutledge repeated his assertion that Local 715 no longer existed.

4   He also stated that Local 715 no longer represented employees at the Hospitals, and that they

5   were now represented by UHW.  [Quintel Decl. ¶ 29.]

6       Local 715 maintained a website located at http://www.SEIU715.org (the "Local 715

7   Website").  Beginning in late January, 2007, Laurie Quintel began to monitor the Local 715

8   Website.  She discovered that the website now contained a prominent statement that "We are in

9   the process of transitioning to our new local 521.  This web site will be taken down on Feb. 28.

10  On March 1, our new Local's web site www.seiu521.org will have your chapter pages and other

11  information."  [Quintel Decl. ¶ 30 & Exh. P.]

12      On March 1, 2007, Ms. Quintel discovered that when she attempted to access the Local

13  715 Website, she was now automatically redirected to the website of Local 521 at

14  http://www.SEIU521.org (the "Local 521 Website").  [Quintel Decl. ¶ 32.]  In exploring the

15  Local 521 Website, Ms. Quintel discovered a page containing a statement that five local unions,

16  including Local 715 "have come together . . . by forming one larger, more powerful local."

17  [Quintel Decl. ¶ 32 & Exh. R.]  Another page referenced benefits available to "former SEIU

18  Local 715 members."  [Id.]  On March 5, Ms. Quintel discovered the following statement on the

19  Local 521 Website:  "Five locals (415, 535, 700, 715, and 817) have come together to cover the

20  North Central region by forming one larger, more powerful local.  On January 2, 2007, our new

21  local received its charter.  On March 1, 2007, the resources of all five locals were transferred to

22  Local 521."  [Quintel Decl. ¶ 40 & Exh. X.]

23      When Ms. Quintel used the Local 521 Website's search feature to find the Hospitals, her

24  search returned no results.  [Quintel Decl. Exh. X.]  However, when, on March 2, 2007, she

25  performed a similar search on the UHW Website (http://SEIU-UHW.org), "Stanford University

26  Medical Center" was listed as a facility represented by UHW.[4]  [Quintel Decl. ¶ 34 & Exh. S.]

27  

28  _____

[4] UHW has continued to assert on its website that it represents the Hospitals since that time, as
screenshots from its website taken in March, 2008 reveal.  [Inciardi Decl. ¶ 29-30 & Exh. C21-

7

SFCA_1424410.4

1

**(8)    The Hospitals Cease Remitting Dues To "Local 715"**

2         It was now clear to the Hospitals that, at least as of March 1, 2007, Local 715 had ceased

3    to exist.  Yet, under the CBA, the Hospitals were obligated to deduct union dues from

4    Bargaining Unit employees' paychecks and remit them to Local 715.  The Hospitals determined

5    that they could no longer remit dues to "Local 715" now that the organization apparently was no

6    more and its former representatives refused to demonstrate otherwise.  [Quintel Decl. ¶ 36-37.]

7    Accordingly, on March 2, 2007, Ms. Quintel sent a letter to Ms. Sermersheim stating that, after

8    the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to

9    "Local 715" absent clarification of its status and the identity of the organization that would be

10   receiving the dues.[5]  [Quintel Decl. ¶ 36 & Exh. U.]  The requested information was not

11   provided, and after March 1, 2007, the Hospitals ceased remitting dues.  [Quintel Decl. ¶ 37.]

12       **(9)    In June, 2007, "Local 715" Is Purportedly Placed Under Trusteeship,**

13                  **And The Trustee Appoints New Counsel**

14         On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship."  [Inciardi

15   Decl. Exh. Z.]  That order stated that SEIU was placing Local 715 under trusteeship, removing

16   its officers, and appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that the

17   SEIU's reorganization plan remained in place. [Id.]  Mr. Smith sent a letter to Ms. Quintel on

18   June 14, 2007 informing her of the trusteeship, that the Servicing Agreement would "remain in

19   full force and effect," and that UHW employees would continue to "service" the Hospitals.

20   [Quintel Decl. ¶ 48 & Exh. FF.]

21

22   C22.]

23   [5] In fact, evidence later came to light that Local 521 was the actual recipient of the dues being
     remitted to Local 715.  A document posted on the Local 521 Website titled "Dues Receipts of the
24   year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling
     $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used
25   acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had
     been assigned to the SHC/LPCH Bargaining Unit).  [Arnold Decl. ¶ 57 & Exh. WW.]  This was
26   the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for
     February, 2007, which was $21,949.35.  [Quintel Decl. ¶ 38 & Exh. V.]  Additionally, given
27   UHW's requests for identifying information for Hospital employees in early 2006, it appeared
     that the ultimate recipient of the dues sent to "Local 715" could be UHW.
28

8

SFCA_1424410.4

1    Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm

2    Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715".  Mr. Arnold

3    confirmed this in a conversation with Ms. Chisholm followed by a confirming letter.  [Arnold

4    Decl. ¶ 40 & Exh. FF.]

5            **(10)    Weinberg Attorneys Continue To Act On Behalf Of "Local 715", But**

6                    **Refuse To Clarify Their Representative Capacity**

7            To date, the Hospitals have not received any notification that the Altshuler Firm no

8    longer represents "Local 715."  Nevertheless, the Hospitals continued to receive correspondence

9    from Weinberg Firm attorneys purporting to act on "Local 715's" behalf in grievance and

10   arbitration matters.  [Arnold Decl. ¶ 49; 55 & 65 & Exh. UU & EE.]  Weinberg Firm attorneys

11   also appeared in each arbitration hearing that was held after the appointment of the Altshuler

12   Firm as counsel.  [Arnold Decl. ¶ 46 & 49 & Exh. LL.]  The Hospitals were aware that the

13   Weinberg Firm has historically acted as counsel to UHW and it had previously sent

14   correspondence to the Hospitals representing UHW pursuant to the Servicing Agreement.

15   [Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals became concerned that when the Weinberg Firm

16   acted on behalf of "Local 715," it was actually retained by UHW and acting under authority of

17   the rejected Servicing Agreement.  Accordingly, beginning on August 24, 2007, Mr. Arnold

18   made repeated requests of both Ms. Chisholm and Mr. Smith to clarify whether the Weinberg

19   Firm was representing "Local 715" directly, or was acting pursuant to the invalid Servicing

20   Agreement.  [Arnold Decl. ¶ 49 & Exh. NN.]  These requests were met with silence or outright

21   refusal to provide the information requested.  [Arnold Decl. ¶ 50-53 & Exh. OO-RR.]  The

22   Hospitals could only conclude that the Weinberg Firm was, in fact, representing UHW, and that

23   its appearances on "Local 715's" behalf were made under authority of the rejected Servicing

24   Agreement.  Therefore, by a letter dated October 16, 2007, Mr. Arnold informed Ms. Chisholm

25   that the Hospitals would no longer participate in any grievance or arbitration proceedings in

26   which the Weinberg Firm appeared absent assurances that the appearance was made directly on

27   behalf of "Local 715" and not pursuant to the invalid Servicing Agreement.  [Arnold Decl. ¶ 53

28   & Exh. RR.]  To date, neither the Weinberg Firm nor the Altshuler Firm have provided the

1    Hospitals with the requested assurance.

2    **C.      The Hospitals Refuse To Arbitrate The Acosta Grievance Absent**

3    **Clarification Of The Nature Of The Weinberg Firm's Representation Of**

4    **"Local 715"**

5    The Acosta Grievance was filed on or around March 17, 2007 and alleged that the

6    Hospital terminated Mr. Acosta's employment in violation of the CBA.  [Quintel Decl. ¶ 64 &

7    Exh. RR.]  Thomas A. Angelo was selected as arbitrator (the "Arbitrator").  [Arnold Decl. ¶ 60

8    & Exh. ZZ.]  On June 26, 2007, Mr. Arnold, having been informed of the Trustee's appointment

9    of Ms. Chisholm as counsel, sent a letter to the Arbitrator informing him of "Local 715's"

10   change in counsel.  [Arnold Decl. ¶ 62 & Exh. BBB.]  A copy of the letter was sent to Ms.

11   Chisholm.  [Id.]

12   The arbitration hearing was scheduled for November 28, 2007.  On November 7, 2007,

13   Mr. Arnold informed Ms. Chisholm that the Hospitals intended to insist upon compliance with

14   Article 26.7.8 of the CBA, which provided that arbitration proceedings were to be closed absent

15   prior agreement by the parties.  [Arnold Decl. ¶ 63 & Exh. CCC.]  In his letter, Mr. Arnold also

16   informed Ms. Chisholm that the Hospitals were not obligated, and would not agree, to engage in

17   arbitration proceedings with UHW representatives, including Weinberg attorneys, acting

18   pursuant to the invalid Servicing Agreement.  [Id.]

19   Mr. Arnold appeared at the arbitration hearing on behalf of the Hospitals.  [Arnold Decl.

20   ¶ 66.]  Appearing purportedly on behalf of "Local 715" was W. Daniel Boone of the Weinberg

21   Firm.  [Id.]  Accompanying him was an employee of UHW named Myriam Escamilla.  [Id.]  Mr.

22   Arnold reiterated the Hospitals' position on the record that it would refuse to proceed absent a

23   representation from Mr. Boone that he was retained by "Local 715" directly, and not retained by

24   UHW and appearing pursuant to the rejected Servicing Agreement.  [Arnold Decl. ¶ 66 & Exh.

25   FFF p. 17-18.]  Mr. Boone refused to provide the requested representation, stating,

26           So I am here.  I am stating the appearance on behalf of the Union.
             Present with me is a union representative.  Whether, to use the
27           language, I am retained directly or through a service agreement is
             not part of the proceedings here.

28

10

SFCA_1424410.4

> I'm not quite sure I understand why it's of significance to Mr.
> Arnold to have me state one way or the other, but he seems to
> think it's important; and for that reason, I'm not going to do it
> because I'm not here to aid in whatever tactical moves are being
> made by Mr. Arnold in aid of some other proceedings which either
> have been filed or he wants the Union to file.

[Arnold Decl. Exh. FFF p. 26.]

Given that Mr. Boone expressly refused to clarify the nature of his appearance, the Hospitals refused to go forward with the arbitration.  [Arnold Decl. Exh. FFF p. 26.] Furthermore, Mr. Arnold stated the Hospitals' position that the Arbitrator lacked the authority to determine the validity of the Servicing Agreement, or to decide representational issues, such as whether "Local 715" had validly transferred its representational rights to UHW, permitting an attorney retained by UHW to appear at the arbitration hearing.  [Arnold Decl. Exh. FFF p. 34-35.]  Given that Mr. Boone had expressly declined to state whether he was retained by "Local 715" or UHW, and had provided no evidence on that issue, to allow the hearing to go forward with Mr. Boone acting as the representative would be to effectively decide that issue.  The Arbitrator agreed that he lacked the power to decide the validity of the Servicing Agreement or representational issues.  [Arnold Decl. Exh. FFF p. 33-34.]

### D.    The Arbitrator's Decision

On November 30, 2007, the Arbitrator issued a "Decision and Award" (the "Award").  In the Award, the Arbitrator confirmed that he lacked the power to decide representational issues, including the issue of the validity of the Servicing Agreement.  [Arnold Decl. Exh. III p. 4 & 10.] Nevertheless, the Arbitrator proceeded to decide that Mr. Boone was validly representing "Local 715" and upheld the Acosta Grievance.  [Arnold Decl. Exh. III p. 14-19.]

### E.    The Petition And Counter-Petition

"Local 715" filed the instant petition to confirm the Award on January 11, 2008.  [Dkt. No. 1.]  The Hospitals timely filed an answer to the petition on March 6, 2008, as well as a counter-petition to vacate the Award.  [Dkt. No. 18.]  "Local 715" did not plead in response to the counter-petition.  [Inciardi Decl. Exh. HH.]

11

SFCA_1424410.4

III.   **DISCUSSION**

   A.    **Legal Standards Applicable To Summary Judgment Motions**

   Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56). The non-moving party is not entitled to rest on the mere allegations of its pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Material facts "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine basis of material fact if, on the record taken as a whole, a rational trier of fact could not find in favor of a party opposing summary judgment. *See Matushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1985).

   B.    **The Hospitals Were Not Required To Arbitrate The Acosta Grievance, And The Award Cannot Be Enforced, Because "Local 715" Has Effectively Ceased To Exist**

   It is well-established that, where the NLRB certifies a union as the exclusive bargaining representative of an employer's workers pursuant to the NLRA, the employer is not only obligated to bargain with that union, but is prohibited from bargaining with any other union. *Medo Photo Supply Corporation v. National Labor Relations Board*, 321 U.S. 678, 673-674 (1944); *Nevada Security Innovations, Ltd.*, 341 NLRB 953, 955 (2004). It follows that, where the certified union has ceased to exist, the employer's bargaining obligation is at an end. *Brooks v. National Labor Relations Board*, 348 U.S. 96, 98 (1954); *Pioneer Inn Associates v. National*

12

1    *Labor Relations Board*, 578 F.2d 835, 839 (9th Cir. 1978).

2    Likewise, where an employer and the certified union negotiate a collective bargaining

3    agreement providing for arbitration of disputes, and the union subsequently ceases to exist, the

4    employer no longer has any obligation to arbitrate because only the union has standing to compel

5    arbitration. *Moruzzi v. Dynamics Corporation Of America*, 443 F.Supp. 332, 336-337 (S.D.N.Y.

6    1977); *Lorber Industries Of California v. Los Angles Printworks Corporation*, 803 F.2d 523, 525

7    (9th Cir. 1986) (The obligation to arbitrate "may not be invoked by one who is not a party to the

8    agreement"). Where the certified union has ceased to exist, its former officials or representatives

9    do not have standing to compel arbitration under its name. Thus, in *Moruzzi, supra*, where the

10   union went out of existence, its former president "became neither the successor to nor the

11   assignee of the defunct [union] by adopting its name" and he therefore lacked standing to compel

12   arbitration in the former union's name. *Moruzzi, supra*, 443 F.Supp. at 337. Indeed, the Court

13   lacks jurisdiction over a suit by or against a union, where that union does not actually exist.

14   *International Brotherhood Of Boilermakers, Iron Ship Builders, Black-Smiths, Forgers And*

15   *Helpers, AFL-CIO v. Local Lodge D354*, 897 F.2d 1400, 1402-1403 (7th Cir. 1990) ("two

16   opposing parties are minimally required to create a case or controversy.").

17   In this case, a party claiming to be "Local 715" sought to arbitrate with the Hospitals and

18   now seeks to enforce the Award.[6] However, the undisputed evidence demonstrates that, on or

19   around March 1, 2007, pursuant to an explicit plan adopted by the SEIU International, Local 715

20   effectively ceased to exist. Therefore, the Hospitals had and have no obligation to arbitrate the

21   grievance in question. Indeed, the Court lacks jurisdiction over this case.

22          **(1)    SEIU Adopted And Implemented A Plan That Expressly Called For**

23                  **The Dismemberment And Dissolution Of Local 715**

24   It cannot be disputed that SEIU developed and adopted a reorganization plan for

25   _____

26   [6] The Hospitals' position is that Local 715 ceased to exist after March 1, 2007, or thereabouts.
     The Hospitals anticipate that Local 715 will contend (despite the evidence to the contrary) that it
27   continues to exist. References are, for this reason, made to "Local 715" relating to the time
     period after March 1, 2007. These references do not represent, and should not be construed as,
28   an admission that Local 715 continued to exist after that date.

     _____

                                        13

SFCA_1424410.4

California SEIU locals that called for Local 715 to be absorbed by Local 521 and its private

hospital operations, including those relating to the Hospitals, to be transferred to UHW.  [Inciardi

Decl. Exh. T p. 42-43; 61-62 & 65; Quintel Decl. Exh. K. 2-4.]  In the meantime, the Joint

Report noted that UHW was "actually servicing" private hospital employees represented by

Local 715 pursuant to servicing agreements.  [Inciardi Decl. Exh. T p. 16.]

**(2)    The Bulk Of Local 715's Former Membership And Functions Were**

**Merged Into Local 521**

In January, 2007, International President Stern ordered that the SEIU reorganization plan

be implemented as soon as practicable.  [Inciardi Decl. Exh. U.]  It is undisputed that, after

President Stern's order, Local 715 publicly announced that it was "in the process of transitioning

to our new local 521" and that the Local 715 Website would be "taken down" on the last day of

February, 2007.  [Quintel Decl. ¶ 30 & Exh. P.]  It is further undisputed that, after March 1,

2007, Local 521 publicly announced that Local 715 and other locals "have come together" and

formed "one larger, more powerful local" and that, "On March 1, 2007, the resources of all five

locals were transferred to Local 521."[7]  [Quintel Decl. ¶ 40 & Exh. X.]

**(3)    Local 715's Private Hospital Members And Functions Were**

**Transferred To UHW**

Apparently, due in large part to the Hospitals' resistance, the transfer of Local 715's

private hospital operations to UHW was conducted less openly than the merger into Local 521.

[Inciardi Decl. Exh. W p. 4]  However, without doubt the transfer did take place, and Local 715

has ceased to exist.

**a)    Local 715 Assigned Its Representational Functions To UHW**

After the Servicing Agreement became effective, although "Local 715" nominally

retained its status as the bargaining representative, UHW aggregated to itself all significant

representational duties (or at least attempted to do so).  Thus, admitted employees of UHW were

---

[7] In an apparent effort to maintain the fiction of its continued existence, the Local 715 Website
was subsequently re-established.  However, the website was virtually devoid of content.  [See
Declaration Of Scott P. Inciardi, ¶ 2-23 & Exh. A-B.]

14

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

CASE NO:  5:08-CV-0213 JF

SFCA_1424410.4

assigned to deal with the Hospitals regarding matters of contract negotiation and employee

grievances, and the Hospitals were instructed to send all correspondence directly to UHW

employees at UHW's San Francisco office.  [Quintel Decl. ¶ 1-13 & Exh. B-C.]  UHW

employees submitted grievances on behalf of Bargaining Unit employees on UHW letterhead,

and referred to those employees as members of UHW.  [Quintel Decl. ¶ 15 & Exh. D.]  Greg

Pullman confirmed in an e-mail that UHW employees "handling ***all representation matters*** for

SEIU Local 715."  [Quintel Decl. ¶ 18 & Exh. F (emphasis supplied).]  At the same time, UHW

employee Jocelyn Olick confirmed in an e-mail that she and the other UHW employees assigned

to "service" the Bargaining Unit did not work for Local 715.  [Quintel Decl. ¶ 20 & Exh. H.]

**b)**    **UHW Began Receiving Dues Deducted From Bargaining Unit**

**Members Paychecks**

In early April, 2006 UHW began receiving from Local 715 the dues deducted from

Bargaining Unit employees' paychecks and sent to Local 715 by the Hospitals.  This is

established by the undisputed fact that persons admittedly acting on behalf of UHW demanded

information from the Hospitals for the express purpose of processing the dues deducted from

Bargaining Unit employees' paychecks (although the Servicing Agreement called for UHW to

provide "services" free of charge).  [Quintel Decl. ¶ 16-17 & Exh. E.]

**c)**    **Bargaining Unit Employees Were Asked To Agree To Change**

**Their Union Affiliation To UHW**

In September, 2006, Bargaining Unit employees were asked to ratify the reorganization

plan adopted by SEIU by means of a state-wide vote.  The balloting material distributed to

Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille (sic)

Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers –

West."  [Quintel Decl. ¶ 26-27 & Exh. M-N.]

**d)**    **President Stern Ordered The "Reorganization" Of Local 715**

**Into UHW, And Chief Shop Steward Robert Rutledge**

**Admitted That Local 715 Had Ceased To Exist**

On January 2, 2007, International President Stern issued the order that the employees

15

1   formerly represented by Local 715 were to be "reorganized" (a euphemism for merged) into

2   other locals, and specifically stated that the Hospital employees formerly represented by Local

3   715 were to be "reorganized" into UHW as soon as practicable.  [Inciardi Decl. Exh. U.]

4          On January 31, 2007, Local 715's Chief Shop Steward, Robert Rutledge stated in an e-

5   mail that "SEIU 715 no longer exists and a service agreement between the former 715 and UHW

6   has been in place since March first of 2006."  [Quintel Decl. ¶ 28029 & Exh. O.]  Mr. Rutledge

7   confirmed this statement in a meeting with Ms. Quintel two (2) days later in which he stated that

8   Local 715 no longer represented the Bargaining Unit, that it had ceased to exist, and that UHW

9   now represented the Bargaining Unit.  [Quintel Decl. ¶ 29.]

10                 **e)        "Local 715" Is Represented By UHW's Legal Counsel**

11         Historically, Local 715 was represented by the Weinberg Firm, which has also long

12  represented UHW.  [Arnold Decl. ¶ 9-10.]  In June, 2007, SEIU purported to place "Local 715"

13  under trusteeship, and the trustee, Bruce "Rusty" Smith designated new counsel for "Local 715"

14  – the Altshuler Firm.  [Arnold Decl. ¶ 40 & Exh. FF.]  Nevertheless, the Weinberg Firm

15  continued to request to bargain, appear in grievance and arbitration proceedings, and issue

16  correspondence purportedly on behalf of "Local 715."  [Arnold Decl. ¶ 47; 49; 55; & 65 & Exh.

17  UU & EEE; Quintel Decl. ¶ 54-55 & Exh. K-L.]  Despite repeated requests by the Hospitals,

18  neither the Weinberg Firm, nor the Altshuler Firm, nor Mr. Smith himself, have been willing to

19  make a simple representation that the Weinberg Firm was representing "Local 715" directly.

20  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  Their refusal – even when under legal compulsion – can

21  only lead to the conclusion that the Weinberg Firm is not representing "Local 715" directly.

22  Instead, it is retained by and represents UHW and is providing legal services pursuant to the

23  invalid Servicing Agreement.  Its position, therefore, is no different than UHW itself.

24                 **f)        UHW Claims To Represent The Bargaining Unit**

25         UHW publicly asserts that it, not "Local 715", represents the Bargaining Unit.  The

26  UHW Website lists "Stanford University Medical Center" among the facilities that it claims to

27  represent and lists Myriam Escamilla as the "UHW Representative" assigned to the facility.

28  [Inciardi Decl. ¶ 29-30 & Exh. C20-C22.]  The UHW Website also contains a document listing

                                                  16

SFCA_1424410.4

1  those collective bargaining agreements scheduled to expire in 2008 for the units represented by

2  UHW.  "Stanford Univ. Med. Ctr./ Lucille Packard" is among the contracts listed.  [Inciardi

3  Decl. ¶ 27 & Exh. D at p. 3.]

4          **(4)      As Local 715 Has Effectively Ceased To Exist, The Hospitals Had No**

5          **Obligation To Arbitrate The Acosta Grievance, And It Cannot Be**

6          **Enforced Against Them**

7          As the above evidence demonstrates, SEIU's plan to dissolve Local 715 was carried out

8  and, as of March 1, 2007, Local 715 was no more.  Therefore, the Hospitals were not and are not

9  obligated to arbitrate the Acosta Grievance, nor can the Award be enforced against them, as the

10 only party with standing to compel arbitration no longer exists.  Second, this Court lacks

11 jurisdiction over this case because the party purportedly maintaining the action has been shown

12 to be fictitious.  Therefore, the Court should grant the Hospitals Cross-Petition, vacate the

13 Arbitrator's Award in whole, and dismiss "Local 715's" Petition with prejudice.

14      **C.      Whether Or Not Local 715 Continues To Exist, The Hospitals Are Not**

15          **Required To Participate In Grievance And/Or Arbitration Proceedings With**

16          **Representatives Of UHW Because UHW Is Not The Certified Representative**

17          **And The Servicing Agreement Is Not Valid**

18         Even assuming for the sake of argument only that Local 715 continues to exist (which the

19 Hospitals by no means concede), the Hospitals were still not obligated to arbitrate the Acosta

20 Grievance because the actual party that sought to arbitrate with the Hospitals is not Local 715,

21 but UHW, and UHW has no standing to compel the Hospitals to arbitrate or enforce the Award.

22         "Local 715" and the Weinberg attorneys who have attempted to appear on its behalf with

23 respect to the Acosta Grievance and other grievances filed since March, 2007 have been

24 unwilling to state that such appearances were, or would be, made on behalf of "Local 715"

25 directly, although it would be in their interest to do so were that the case.[8]  [Arnold Decl. ¶ 64-66

26 

27 _____
   [8] In a letter dated December 14, 2007, Mr. Smith stated that he authorized the Weinberg Firm to
28 "represent the Union all (sic) aspects of the arbitration process."  [Quintel Decl. ¶ 56 & Exh.
   MM.]  This letter, like the representations made by the Weinberg Firm itself on this issue, was
   carefully crafted in such a way as to fail to address the essential question – was the Weinberg

SFCA_1424410.4

1  & Exh. DDD-FFF.]  This behavior is tantamount to an admission that such appearances were

2  not, and would not be, directly on behalf of "Local 715."  Instead, the evidence reflects that the

3  Weinberg attorneys have sought to arbitrate with the Hospitals are retained by UHW and are

4  appearing for "Local 715" pursuant to the invalid Servicing Agreement, which the "trustee" has

5  attempted to resurrect.

6      "Local 715" may argue that UHW attorneys are entitled to represent "Local 715"

7  pursuant to the rejected Servicing Agreement.  However, while it is established that a union may

8  assign agents to appear on its behalf, what is actually transpiring is an invalid attempt to transfer

9  "Local 715's" bargaining duties wholesale to UHW.  The Hospitals are not obliged to acquiesce

10  in this attempt, and are actually prohibited from doing so.

11      The invalid Servicing Agreement authorizes UHW to provide "services" to "Local 715"

12  consisting of representation in grievance and arbitration proceedings, representation in labor

13  management meetings, and assistance to members appearing before the NLRB.[9]  [Arnold Decl.

14  Exh. CC.]  Yet, after the Servicing Agreement went into effect, UHW simply replaced Local 715

15  with respect to all aspects of the bargaining relationship.  Additionally, the plan adopted by the

16  SEIU expressly called for Local 715's representative duties to be transferred to UHW.

17      It has been recognized that, under the National Labor Relations Act, one union may use

18  agents or experts from another union to act on its behalf in formal labor negotiations.  *Goad*

19  *Company*, 333 NLRB 677, 679 (2001).  However, a union may not use the purported

20  appointment of agents to effectuate a *de facto* change of the bargaining representative, and under

21  such circumstances, the employer is under no obligation to deal with the purported agents.

22  *Goad, supra*, 333 NLRB at 680 (employer not obligated to deal with purported agent where

23

24  Firm's representation direct or pursuant to the Servicing Agreement, which Mr. Smith asserted

25  remained in full force and effect.  Mr. Smith's representation was completely consistent with
    continued representation through the Servicing Agreement.

26  [9] The Servicing Agreement calls upon Local 715 and UHW to take steps to enforce the Servicing

27  Agreement in the event that it is rejected by the Hospitals, and for , Local 715 to resume
    representing the Bargaining Unit pending its enforcement, neither of which has taken place.

28  [Arnold Decl. Exh. CC.]

STANDFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO:  5:08-CV-0213 JF

SFCA_1424410.4

certified union "did not simply enlist the aid of an agent . . . it transferred its representational duties and responsibilities.")  See also *Sherwood Ford, Inc*, 188 NLRB 131, 133-134 (1971) (Board disregarded agency agreement between unions as "a device, subterfuge, or stratagem" designed to accomplish a *de facto* change of the bargaining agent.).

The same conclusion applies here.  "Local 715" and UHW have used the invalid Servicing Agreement as a "device, subterfuge, or stratagem" to, in effect, transfer representative status to UHW.  Rather than serving as a mere agent, as called for in the Servicing Agreement, UHW has sought to completely supplant Local 715 with respect to every aspect of collective bargaining, leaving "Local 715" as the representative in name only.  Given this, the Hospitals are not obligated to (and, in fact, must not) deal with employees and representatives, including Weinberg Firm attorneys, acting pursuant to the invalid Servicing Agreement.

## D.     The Arbitrator's Award Was Invalid And Should Be Vacated

The Hospitals filed a Counter-Petition seeking vacatur of the Arbitrator's Award.  "Local 715" has failed to file an answer to that Counter-Petition, and judgment in the Hospitals' favor should be entered on that basis.  Furthermore, even if judgment is not granted on that basis, it should be granted because the Award was invalid for multiple reasons.

### (1)     "Local 715" Failed To Respond To The Hospitals' Counter-Petition

Rule 12(a)(1)(B) of the Federal Rules of Civil Procedure provides that "A party must serve an answer to a counterclaim or crossclaim within 20 days after being served with the pleading that states the counterclaim or crossclaim."  F.R.Civ.P. 12(a)(1)(B).  The Hospitals filed a Counter-Petition To Vacate Arbitration Award on March 6, 2008.  [Dkt. No. 18.]  "Local 715" did not file an answer to the Counter-Petition.  [Inciardi Decl. Exh. HH.]  "Local 715" is therefore in default, and the Court should enter judgment in favor of the Hospitals on their Counter-Petition.

### (2)     The Arbitrator Decided Issues That Were Not Arbitrable Under The CBA

An arbitrator has authority only to decide issues that are arbitrable in terms of the scope of issues made arbitrable under the parties' agreement, and in terms of the issues submitted to the

19

1  arbitrator for decision. *AT&T Technologies, Inc. v. Communications Workers Of America*, 475

2  U.S. 643, 656 (1986). It is well-established that an arbitrator's power begins and ends with the

3  contract, and he or she has no authority to enforce or interpret federal labor laws. *Doyle v.*

4  *Raley's Incorporated*, 158 F.3d 1012, 1015 (9th Cir. 1998); *Phoenix Newspapers, Inc. v. Phoenix*

5  *Mailers Union 752*, 989 F.2d 1077, 1079 FN1 (9th Cir. 1993).

6           In this case, although the issue to be arbitrated was whether the termination of Mr. Acosta

7  violated the CBA, the Arbitrator was presented with a threshold issue of whether the attorney

8  who appeared purportedly on behalf of "Local 715" was actually appearing in that capacity, or

9  was appearing pursuant to an invalid Servicing Agreement, which the Hospitals had rejected.

10  The purported trustee had expressly stated his intention to utilize the Servicing Agreement

11  without change whatsoever, and that agreement provided that UHW would provide professional

12  services at arbitrations. [Quintel Decl. Exh. FF.] The Weinberg firm represents UHW. [Arnold

13  Decl. ¶ 10.] This issue was not one that could be resolved by interpreting the CBA. Rather, it

14  was a representational issue, namely whether Mr. Boone's appearance under authority of the

15  Servicing Agreement comported with the requirements of the NLRA. The Arbitrator expressly

16  agreed, and held in his Award, that he had no authority to decide representational issues,

17  including the validity of the Servicing Agreement. [Arnold Decl. Exh. III p. 15 & FFF p. 34-36.]

18  Yet, inexplicably, the Arbitrator chose to decide that very issue, determining without the benefit

19  of any evidence to support it that Mr. Boone was appearing on behalf of "Local 715", and

20  therefore, necessarily, that the Servicing Agreement pursuant to which he was appearing was

21  valid. This was a determination that, admittedly, was beyond the Arbitrator's power, and should

22  have been decided in an appropriate forum (either before the NLRB or a federal court).[10]

23           **(3)    The Award Exceeded The Issues That Were Submitted For Decision**

24

25  [10] Of course, the situation would have been different had Mr. Boone represented that he was, in
    fact, retained directly by "Local 715" and was appearing in that capacity. The Hospitals

26  indicated that they would have been willing to accept such a representation. However, he
    expressly refused to do so. This refusal is explained by the fact that, as shown above, "Local

27  715" had long since ceased to exist, its representational duties had been transferred to UHW, and
    its legal representation was being carried out by Weinberg attorneys retained by UHW and acting

28  pursuant to the rejected Servicing Agreement.

SFCA_1424410.4

1    Where an arbitrator fails to confine his or her decision to the issues submitted by the

2    arbitrating parties, the award is invalid, and must be vacated. *Sprewell v. Golden State Warriors*,

3    266 F.3d 979, 986 (9th Cir. 2001); *California Pacific Medical Center v. Service Employees*

4    *International Union, United Healthcare Workers – West*, No. C 06 4685 SC, 2007 WL

5    81906 (N.D.Cal. 2007). In this case, counsel for the Hospitals made abundantly clear, and the

6    Arbitrator expressly agreed, that the Hospitals were ***not*** submitting representational issues,

7    including the issue of the validity of the Servicing Agreement, for decision by the Arbitrator.

8    [Arnold Decl. Exh. III p. 15.] Beyond that, the Hospitals made clear that, to the extent that Mr.

9    Boone was appearing pursuant to the Servicing Agreement, they refused to arbitrate the

10   underling grievance. [Arnold Decl. Exh. FFF p. 40.] The only proper course of action at that

11   point was for the Arbitrator to stay the proceedings (as the Hospitals requested) until such time

12   as the threshold representational issues could be resolved in a competent forum.[11] Instead, he

13   decided the representational issues that were admittedly not submitted to him, and the merits of

14   the underlying grievance, which the Hospitals had refused to arbitrate. His decision is, therefore,

15   invalid, and must be vacated.

16       **(4)    The Award Failed To Draw Its Essence From The CBA And Did Not**

17              **Represent A Plausible Interpretation Of The CBA**

18       An arbitral award "is legitimate only so long as it draws its essence from the collective

19   bargaining agreement." *United Steelworkers Of America v. Enterprise Wheel And Car*

20   *Corporation* ("*Enterprise Wheel*"), 363 U.S. 593, 597 (1960); *Edward Hines Lumber Co. v.*

21

22   ---

[11] The purported "Local 715" could have, for example, filed a charge with the NLRB to resolve
23   the representational issue, as the Servicing Agreement itself contemplated, although by the time
     the hearing convened, more than eleven (11) months had passed since the Hospitals rejected the
24   Servicing Agreement and any charge that might have been filed alleging that the rejection was
     unlawful would have been barred by the six (6) month statute of limitations contained in 29
25   U.S.C. 160(b). It could also have sought to compel arbitration in a federal court, as it did with
     respect to three (3) other grievances, which the Hospitals refused to arbitrate over the same
26   representational issues. (See petitions to compel arbitration in related case numbers 5:08-CV-
     00216 JF (Simien), 5:08-CV-01726 JF (Satuito) , and 5:08-CV-01726 JF (Andrade). "Local
27   715" surely could not validly ask arbitrators to issue decisions in those cases without the
     participation of the Hospitals (as "Local 715" recognized by filing the petitions). Arbitrator
28   Angelo's decision was equally invalid.

SFCA_1424410.4

1  *Lumber & Sawmill Workers Local No. 2588*, 764 F.2d 631 634 (1985).  A court is not permitted

2  to overturn an arbitrator's award because its own interpretation of the collective bargaining

3  agreement differs from that of the arbitrator.  *Major League Baseball Players Association v.*

4  *Garvey*, 532 U.S. 504, 509 (2001).  However, courts are obliged to uphold an award only where

5  the arbitrator's reasoning "represents a plausible interpretation of the contract in the context of

6  the parties' conduct".  *Edward Hines, supra*, 764 F.2d at 634; *Stead Motors Of Walnut Creek v.*

7  *Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1209 (9th Cir. 1989).  Where an award

8  is in direct conflict with contract language, the award cannot stand under any circumstances.

9  *Pacific Motor Trucking Co. v. Automotive Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983).

10          Even if it were proper for the Arbitrator to make a finding on the capacity in which Mr.

11  Boone was appearing at the Arbitration, the record reflects that he either ignored or disregarded

12  the evidence on that issue.  As discussed above, Mr. Boone was asked to make a representation

13  as to whether he was retained directly by "Local 715", or whether he was retained by UHW and

14  appearing pursuant to the Servicing Agreement.  Mr. Boone's statements on the record were

15  carefully crafted to avoid giving an answer to this question.  He represented that he was

16  appearing on behalf of "the Union" without defining what entity he meant by that term.[12]

17  [Arnold Decl. Exh. FFF p. 26.]  He represented that he was appearing on behalf of "Local 715",

18  but his response begged the question – in what capacity was he representing "Local 715" –

19  directly or through the Servicing Agreement.  [Arnold Decl. Exh. FFF p. 23.]  Mr. Boone

20  explicitly refused to answer this fundamental question stating, "[w]hether . . . I am retained

21  directly or through a service agreement is not part of the proceedings here.  I'm not quite sure I

22  understand why it's of significance to Mr. Arnold to have me state one way or the other, but he

23  seems to think it's important; and for that reason, ***I'm not going to do it***."  [Arnold Decl. Exh.

24  FFF p. 26 (emphasis and bracketed material supplied).]  Despite this, the Arbitrator found that

25  Mr. Boone was validly representing "Local 715."

26

27  [12] In fact, Mr. Boone referred to Ms. Escamilla as "a Union representative," although Ms.
    Escamilla is employed by UHW.  Thus, Mr. Boone's definition of the "Union" was evidently

28  flexible enough to include UHW employees.  [Arnold Decl. Exh. FFF p. 26.]

SFCA_1424410.4

1    The Arbitrator buttressed his conclusion by citing the actions (or non-actions) of Myriam

2    Escamilla, who accompanied Mr. Boone to the hearing.  Myriam Escamilla is an employee of

3    UHW – as UHW's website reflects.  [Inciardi Decl. Exh. C22 .]  Mr. Arnold pointed out this fact

4    on the record.  [Arnold Decl. Exh. FFF p. 34-35.]  Neither Ms. Escamilla nor Mr. Boone

5    disputed that she was a UHW employee.[13]  Mr. Boone himself never represented that Ms.

6    Escamilla was an employee or representative of "Local 715", instead referring to her only as "a

7    Union representative."  [Arnold Decl. Exh. FFF p. 26.]  Nevertheless, the Arbitrator stated in his

8    Award that "Mr. Boone also noted that he was accompanied by an SEIU Local 715

9    representative."  [Arnold Decl. Exh. III p. 10.]  He then used Ms. Escamilla's lack of objection to

10    Mr. Boone's appearance as evidence that Mr. Boone was legitimately appearing on behalf of

11    "Local 715."  Of course, because Ms. Escamilla was and is an employee of UHW, she would

12    have no reason (or standing) to object to Mr. Boone's appearance.[14]

13                 **(5)    The Award Conflicts With The Certification**

14    For the reasons described above, the Arbitrator did not have the authority to decide the

15    issues he purported to decide in the Award.  However, even aside from the fact that the

16    Arbitrator exceeded his authority, the Award is invalid because it directly conflicts with an order

17    of the NLRB.  The Board's Certification clearly states that Local 715 is the "exclusive collective

18    bargaining representative" of the Bargaining Unit.  [Arnold Decl. Exh. A.]  As noted previously,

19    the Award gives effect to the Servicing Agreement, which is integral part of an effort to invalidly

20    transfer Local 715's rights and duties as the exclusive representative, as stated in the

21    Certification, to UHW.  It purports to enable UHW and its attorneys to represent the Bargaining

22    Unit in derogation of the Certification.

23    Where an arbitrator's award is contrary to an order of the NLRB, the award is invalid.

24

25    [13] The Arbitrator did not question Ms. Escamilla or take any evidence as to the capacity in which

26    she was appearing.

27    [14] Additionally, to the extent that the Arbitrator's Award would require the Hospitals to deal with
      UHW pursuant to an invalid Servicing Agreement, the Award directly conflicts with Article 1 of

28    the Agreement, which requires the Hospitals to recognize only Local 715.

23

1   *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1278-1279 (9th Cir. 1984)

2   ("where the findings of the Board and an arbitrator conflict on a particular issue, the Board's

3   decision must take precedence."); *A. Dariano & Sons, Inc. v. District Council Of Painters No.*

4   *33*, 869 F.2d 514 (9th Cir. 1989), ("an NLRB decision on a representational issue overrides an

5   arbitrator's decision on the same issue."); *District Council Of Ironworkers v. Swinerton &*

6   *Walberg, Inc*., 752 F.Supp. 344, 345 (1990) (refusing to order the employer to arbitrate a claim

7   that would be inconsistent with a prior Board order).  The Hospitals cannot comply with the

8   Award, which would require them to deal with agents of UHW, and the Board's Certification,

9   which requires that they deal only with Local 715.  Because Arbitrator Angelo's Award conflicts

10  with the Certification, it must be vacated.

11      **E.      If The Court Decides That These Cases Present A Representational Issue On**

12              **Which It Should Not Rule, It Should Issue A Stay**

13          Although this Court is vested with authority to hear suits for breach of a collective

14  bargaining agreement under Section 301, the NLRB has primary jurisdiction over questions of

15  representation under the NLRA.  *Local No 3-193 International Wood-Workers Of America v.*

16  *Ketchikan Pulp Company*, 611 F.2d 1295, 1301 (1980).  This case does not fall within the

17  Board's primary jurisdiction because the Court is not asked to determine the representative status

18  of Local 715.  Rather, the Court is asked to decide that the Hospitals did not breach the CBA

19  because Local 715 no longer exists, or because the demand for arbitration is being made by

20  UHW, which has no standing to demand arbitration under the CBA.  A federal court may decide

21  contractual issues under Section 301, even if such issues closely parallel representational issues.

22  *Hotel Employees, Restaurant Employees Union, Local 2 v. Marriott Corporation*, 961 F.2d 1464,

23  1468 (9th Cir. 1992); *Moruzzi, supra*, 443 F.Supp. at 337 (holding that because the union had

24  ceased to exist, those acting in its name had no standing to compel arbitration).[15]

25

26  [15] Indeed, because Section 301 requires that the suit in question be by or against a "labor
    organization," the court is necessarily to make a finding on the status of the purported labor
27  organization, including whether the purported labor organization actually exists.  29 U.S.C.
    § 185.
28

SFCA_1424410.4

1    Nevertheless, the Hospitals recognize that these issues are closely related to the issue of

2   the representative status of Local 715 because if Local 715 has ceased to exist, then it has

3   necessarily lost its representative status.  In the event that the Court determines that it should not

4   make a determination regarding the status of Local 715 because it involves a representational

5   question within the primary jurisdiction of the NLRB, it should issue an order staying any

6   arbitration proceedings pending resolution of such issue before the NLRB.

7   **IV.**    **CONCLUSION**

8    For the foregoing reasons, the Hospitals respectfully submit that the Court should find

9   that Local 715 no longer exists, or, in the alternative, that the Hospitals were not obligated to

10  participate in arbitration proceedings with persons acting pursuant to the Servicing Agreement,

11  and therefore the Hospitals had no obligation to arbitrate the Acosta Grievance, and the Award

12  cannot be enforced against them.  The Court should further hold that the Arbitrator's Award was

13  improper and vacate the award.  Finally, in the event that the Court decides that it cannot resolve

14  the above issues because there exists a representation issue that must be decided by the NLRB,

15  the Hospitals request that the Court order that the matter be stayed until the Board resolves such

16  issue.

17

18  Dated:  July 18, 2008                FOLEY & LARDNER LLP
                                         LAURENCE R. ARNOLD
19                                       EILEEN R RIDLEY
                                         SCOTT P. INCIARDI
20

21

22                                       By: /s/_____
                                              EILEEN R. RIDLEY
23                                            Attorneys for Respondents and Counter-
                                              Petitioners STANFORD HOSPITAL AND
24                                            CLINICS AND LUCILE PACKARD
                                              CHILDREN'S HOSPITAL
25

26

27

28

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO:  5:08-CV-0213 JF

SFCA_1424410.4