1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| 12<br>13 SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715,<br>14           Petitioner And Counter-Respondent,<br>15     vs.<br>16 STANFORD HOSPITAL AND CLINICS AND LUCILE PACKARD CHILDREN'S HOSPITAL,<br>17<br>18           Respondents And Counter-Petitioners. | Case No: 5:08-CV-0213 JF<br><br>[PROPOSED] ORDER GRANTING STANFORD HOSPITAL AND CLINICS' AND LUCILE PACKARD CHILDREN'S HOSPITAL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS OR DEFENSES<br><br>[FED. R. CIV. P. 56]<br><br>Date:      August 29, 2008<br>Time:     9:00 A.M.<br>Dept:     Ctrm. 3, 5th Floor<br><br>Judge:    Hon. Jeremy Fogel |

19
20
21
22

23 ///
24 ///
25 ///
26 ///
27 ///
28

SFCA_1425585.2

The motion of Respondents and Counter-Petitioners Stanford Hospital And Clinics and Lucile Packard Children's Hospital (the "Hospitals") for summary judgment or, in the alternative adjudication of claims or defenses (the "Motion") came on regularly for hearing on August 29, 2008, with Eileen R. Ridley of Foley & Lardner LLP appearing as counsel for the Hospitals and Bruce Harland of Weinberg Roger & Rosenfeld appearing as counsel for Petitioner Service Employees International Union, Local 715 ("Local 715"). After full consideration of the supporting and opposing papers regarding said motion, the evidence submitted by the parties, the oral argument of counsel, and the files and papers in the action, and good cause appearing, the Court finds that there is no triable issue of any material fact and that the Hospitals are entitled to judgment as a matter of law under Rule 56 of the Federal Rules Of Civil Procedure for the reasons stated below.

## I. LOCAL 715 IS IN DEFAULT BECAUSE IT FAILED TO ANSWER THE HOSPITALS' COUNTER-PETITION

Local 715 is in default, and judgment is ordered against it with respect to the Hospitals' counter-petition because Local 715 failed to plead in response to the Hospitals' counter-petition.

The Court finds that the following facts are material and undisputed.

- "Local 715" filed the instant petition to confirm on January 11, 2008. [Dkt. No. 1.]

- The Hospitals timely filed an answer to the petition on March 6, 2008, as well as a counter-petition to vacate the Award. [Dkt. No. 18.]

- "Local 715" did not plead in response to the counter-petition. [Inciardi Decl. Exh. HH.]

Rule 12(a)(1)(B) of the Federal Rules of Civil Procedure provides that "A party must serve an answer to a counterclaim or crossclaim within 20 days after being served with the pleading that states the counterclaim or crossclaim." F.R.Civ.P. 12(a)(1)(B). Based upon the above-stated undisputed material facts, "Local 715" is in default and judgment is accordingly ordered against it and in favor of the Hospitals on the Hospitals' counter-petition.

1

SFCA_1425585.2

## II.     **LOCAL 715 HAS CEASED TO EXIST**

In the alternative, the Hospitals were not, and are not, obligated to arbitrate over the grievance at issue herein involving Victor Acosta (the "Acosta Grievance") because "Local 715" ceased to exist on or around March 1, 2007.  Additionally, because Local 715 ceased to exist on or around March 1, 2007, "Local 715" lacks standing to enforce or confirm the award issued by Arbitrator Thomas Angelo (the "Arbitrator") regarding the Acosta Grievance.

The Court finds that the following facts are material and undisputed:

- In 1998, the National Labor Relations Board ("NLRB" or the "Board") issued an order (the "Certification") certifying Local 715 as the exclusive collective bargaining representative of a unit of Hospital employees (the "Bargaining Unit") as set forth in the Certification.  [Declaration of Laurence R. Arnold In Support of Motions ("Arnold Decl.) Exh. A.]

- Thereafter, the Hospitals and Local 715 engaged in collective bargaining resulting in a series of collective bargaining agreements.  The current collective bargaining agreement (the "CBA") became effective on January 20, 2006, and is scheduled to expire on November 4, 2008.  [Arnold Decl. Exh. B.]

- Article 1 of The CBA contains a "Recognition Clause" which states that, pursuant to the Board's Certification, the Hospitals recognized Local 715 "as the sole and exclusive representative for the purpose of collective bargaining" with respect to Bargaining Unit employees.  [Arnold Decl. Exh. B.]

- Article 26 of the CBA contains a grievance and arbitration procedure through which alleged violations of the CBA may be challenged.  However, only Local 715 may appeal a grievance to arbitration.  [Arnold Decl. Exh. B.]

- Between February 18 and February 20, 2006, Local 715 entered into a "Servicing Agreement" with Service Employees International Union, United Healthcare Workers –

2

West ("UHW").  [Arnold Decl. ¶ 36 & Exh. CC; Inciardi Decl. Exh. EE.]

• The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility."  [Arnold Decl. Exh. CC.]

• The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the agreement, including initiating proceedings before the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals." [Arnold Decl. Exh. CC.]

•  The  Servicing Agreement was to be effective as of March 1, 2006.  [Arnold Decl. Exh. CC.]

• On February 28, 2006, Greg Pullman, then Local 715's Staff Director, informed Laurie Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an employee of UHW named Ella Hereth in connection with the settlement of grievances and unfair labor practice charges.  [Quintel Decl. ¶ 9.]

• Around the same time, another UHW employee named Rachel Deutsch told Ms. Quintel that UHW would be taking over representation for the Hospitals.  [Quintel Decl. ¶ 10.]

• Ms. Quintel sought clarification from Mr. Pullman, whereupon Mr. Pullman told Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day basis."  [Quintel Decl. ¶ 11-12 & Exh. B.]

• Between March and May, 2006, the functions that had formerly been carried out by Local 715 personnel were carried out exclusively by UHW employees.  UHW employees filed

3

SFCA_1425585.2

grievances on UHW stationery, some of which referred to Bargaining Unit members as "members" of UHW.  [Quintel Decl. ¶ 15 & Exh. D.]  Ms. Hereth sent a letter to Ms. Quintel instructing to "direct all SEIU correspondence" to UHW employees at UHW's San Francisco office.  [Quintel Decl. ¶ 14 & Exh. C.]  On May 22, 2006, Jocelyn Olick, a UHW employee and purported servicing agent under the Servicing Agreement, stated in an e-mail that "I and Ella Hereth do not work for SEIU 715.  SEIU-UHW is doing the representation work here at Stanford Hospital."  [Quintel Decl. ¶ 20 & Exh. H.]  On the same day, Mr. Pullman stated in an e-mail that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San Francisco office are handling all representation matters for SEIU Local 715."  [Quintel Decl. ¶ 20 & Exh. H.]  Ms. Olick also purported to have authority to accept changes to the CBA.  [Quintel Decl. ¶ 21 & Exh. I.]

- On or around March 28, 2006, W. Daniel Boone of the law firm Weinberg Roger & Rosenfeld, which historically represented Local 715, wrote a letter to Laurence R. Arnold, an attorney who represents the Hospitals, which referred to "United Healthcare Workers – West (formerly SEIU, Local 715)."  [Arnold Decl. ¶ 26 & Exh. S.]

- In early April, 2006, UHW employee Phyllis Willett told Ms. Quintel that  when the Hospitals remitted union dues, they needed to provide the social security numbers of the relevant employees to help UHW identify them.  [Quintel Decl. ¶ 16.]

- Around April 17, 2006, Ms. Quintel received a letter from William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU United Healthcare Workers West" and requested that the Hospitals provide information pertaining to Bargaining Unit employees, and the dues deducted from their paychecks.  [Quintel Decl. ¶ 17 & Exh. E.]

- In May and June, 2006, Hospitals informed Local 715 that they did not consent to any transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not

4

deal with employees of UHW.  [Quintel Decl. ¶ 19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]

•   In June, 2006, Hospitals requested information from Local 715 regarding the organization's status and the role of UHW.  [Arnold Decl. ¶ 32 & Exh. Z.]

•   On June 9, 2006 the Service Employees International Union ("SEIU" or the "International") issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report").  The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan").  The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities . . . pursuant to servicing agreements."  [Inciardi Decl. Exh. T p. 16.]  The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed.  With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715.  [Inciardi Decl. Exh. T p. 40.]  The Joint Report also recommended that, "the affiliation of private healthcare units represented by Locals 727, 715, and 2028 should be changed to UHW as soon as feasible."  [Inciardi Decl. Exh. T p. 65.]

•   On June 11, 2006, Andrew L. Stern, International President of SEIU, issued a memorandum to "Affected SEIU Local Unions in California" announcing that SEIU had decided to adopt the recommendations outlined in the Joint Report.  The memorandum confirmed that "Private Sector Hospital units currently represented by Locals 535, 707, 715, 2028, and 4988 will merge into UHW."  [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

•   Hospitals received copies of the Servicing Agreement in mid August and reviewed it. [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.]  The Hospitals

5

SFCA_1425585.2

concluded, based upon the evidence that Local 715 had abdicated its representative duties and assigned them to UHW, that the Servicing Agreement was invalid and rejected it.

- Local 715 was informed of the Hospitals' rejection of the Servicing Agreement on or around August 29, 2006, and was further informed that the Hospitals would not deal with employees of UHW acting pursuant to the Servicing Agreement. [Arnold Decl. ¶ 38 & Exh. EE.]

- In September, 2006, Bargaining Unit employees were asked to ratify the reorganization plan adopted by SEIU by means of a state-wide vote. The balloting material distributed to Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers – West." [Quintel Decl. ¶ 26-27 & Exh. M-N.]

- On January 2, 2007, International President Stern issued an "Order Of Reorganization" to various SEIU locals, including Local 715. [Inciardi Decl. Exh. U.] President Stern ordered that all workers represented by Local 715, with certain exceptions, be "reorganized into SEIU Local 521." President Stern further ordered that "all . . . Stanford/Lucille (sic) Packard Hospital workers be, and are hereby, reorganized into SEIU Local UHW." [Inciardi Decl. Exh. U.] Such "reorganization" was to take place as soon as practicable.

- On January 31, 2007, Chief Shop Steward Robert W. Rutledge, stated in an e-mail that, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006." [Quintel Decl. ¶ 28 & Exh. O.] Copies of the e-mail were sent to Ms. Olick and UHW employee Kim Tavaglione, neither of whom objected to Mr. Rutledge's statement.

- At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his assertion that Local 715 no longer existed. He also stated that Local 715 no longer

6

represented employees at the Hospitals, and that they were now represented by UHW. [Quintel Decl. ¶ 29.]

- In late January, Local 715 prominently posted a statement on its website, located at http://www.SEIU715.org, that "We are in the process of transitioning to our new local 521. This web site will be taken down on Feb. 28. On March 1, our new Local's web site www.seiu521.org will have your chapter pages and other information." [Quintel Decl. ¶ 30 & Exh. P.]

- Beginning on or around March 1, visitors to Local 715's website could no longer access the former site, but were automatically redirected to the website of Service Employees International Union, Local 521 ("Local 521"), located at http://www.SEIU521.org. Local 521's website contained a prominent statement that five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local." [Quintel Decl. ¶ 32 & Exh. R.] Another page referenced benefits available to "former SEIU Local 715 members." [Quintel Decl. ¶ 32 & Exh. R.]

- On or around March 5, 2007, Local 715's website contained the following statement: "Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local. On January 2, 2007, our new local received its charter. On March 1, 2007, the resources of all five locals were transferred to Local 521." [Quintel Decl. ¶ 40 & Exh. X.]

- As of March 2, 2007, UHW's website, located at http://SEIU-UHW.org, contained an assertion that UHW represented the Hospitals' employees. [Quintel Decl. ¶ 34 & Exh. S.] UHW has continued to claim to represent the Hospitals' employees on its website. [Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

- The dues deduction authorization forms, by which the individual bargaining unit members authorized deduction and remittance of union dues, authorized remittance of

7

SFCA_1425585.2

dues specifically to Local 715, and to no other organization. [Quintel Decl. ¶ 35 & Exh. T.]

- In fact, although it was not known to the Hospitals at the time, the actual recipient of the dues being remitted to "Local 715" was Local 521. A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had been assigned to the SHC/LPCH Bargaining Unit). [Arnold Decl. ¶ 57 & Exh. WW.] This was the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for February, 2007, which was $21,949.35. [Quintel Decl. ¶ 38 & Exh. V.]

- On March 2, 2007, the Hospitals informed "Local 715" that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues. [Quintel Decl. ¶ 36 & Exh. U.] The requested information was not provided, and after March 1, 2007, the Hospitals ceased remitting dues. [Quintel Decl. ¶ 37.] The Hospitals continued to deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank account established for that purpose, a procedure that continues to date. [Quintel Decl. ¶ 37.]

- On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship." [Inciardi Decl. Exh. Z.] That order stated that, because of the Hospitals' "position" that Local 715 had ceased to exist, and the transfer of the bulk of Local 715's former members and resources to Local 521, SEIU was placing "Local 715" under trusteeship, removing its officers, and appointing Bruce W. ("Rusty") Smith as trustee. The order confirmed that the SEIU's reorganization plan remained in place and that the remaining members of "Local 715" would be "united with other SEIU healthcare members in SEIU United

8

1  Healthcare Workers – West."  [Inciardi Decl. Exh. Z.]

2

3  •  Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of the trusteeship,

4  that the Servicing Agreement would "remain in full force and effect," and that UHW

5  employees would continue to "service" the Hospitals.  [Quintel Decl. ¶ 48 & Exh. FF.]

6  •  Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm

7  Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr.

8  Arnold confirmed this in a conversation with Ms. Chisholm followed by a confirming

9  letter.  [Arnold Decl. ¶ 40 & Exh. FF.]

10  •  To date, the Hospitals have not received any notification that the Altshuler Firm no

11  longer represents "Local 715."  [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]

12

13  •  Since the announcement of the Altshuler Firm's representation of "Local 715," the

14  Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting

15  to act on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49,

16  55 & 65 & Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration

17  hearing that was held after the appointment of the Altshuler Firm as counsel.  [Arnold

18  Decl. ¶ 46 & 49 & Exh. LL.]

19  •  The Hospitals were aware that the Weinberg Firm has historically acted as counsel to

20  UHW and it had previously sent correspondence to the Hospitals representing UHW

21  pursuant to the Servicing Agreement.[Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals

22  became concerned that when the Weinberg Firm acted on behalf of "Local 715," it was

23  actually retained by UHW and acting under authority of the rejected Servicing

24  Agreement.  However, when the Hospitals requested information from "Local 715" on

25  this issue "Local 715" and its purported attorneys either failed to respond or openly

26  refused to respond.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  The Hospitals concluded

27  that the Weinberg Firm was, in fact, representing UHW, and that its appearances on

28

9

SFCA_1425585.2

"Local 715's" behalf were made under authority of the rejected Servicing Agreement. Therefore, the Hospitals refused to participate in arbitration proceedings with Weinberg attorneys absent assurances that the appearance was made directly on behalf of "Local 715" and not pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 53 & Exh. RR.] Neither the Weinberg Firm nor the Altshuler Firm provided the Hospitals with the requested assurance.

The undisputed facts set forth above demonstrate that on or around March 1, 2007, Local 715 was dissolved and that it no longer exists.  It is well-established that, where the NLRB certifies a union as the exclusive bargaining representative of an employer's workers pursuant to the NLRA, the employer is not only obligated to bargain with that union, but is prohibited from bargaining with any other union.  *Medo Photo Supply Corporation v. National Labor Relations Board*, 321 U.S. 678, 673-674 (1944); *Nevada Security Innovations, Ltd.*, 341 NLRB 953, 955 (2004).  Where the certified union has ceased to exist, the employer's bargaining obligation is at an end.  *Brooks v. National Labor Relations Board*, 348 U.S. 96, 98 (1954); *Pioneer Inn Associates v. National Labor Relations Board*, 578 F.2d 835, 839 (9th Cir. 1978).

Likewise, where an employer and the certified union negotiate a collective bargaining agreement providing for arbitration of disputes, and the union subsequently ceases to exist, the employer no longer has any obligation to arbitrate because only the union has standing to compel arbitration.  *Moruzzi v. Dynamics Corporation Of America*, 443 F.Supp. 332, 336-337 (S.D.N.Y. 1977); *Lorber Industries Of California v. Los Angles Printworks Corporation*, 803 F.2d 523, 525 (9th Cir. 1986) (The obligation to arbitrate "may not be invoked by one who is not a party to the agreement").  Where the certified union has ceased to exist, its former officials or representatives do not have standing to compel arbitration under its name.  *Moruzzi, supra*, 443 F.Supp. at 337.

Because Local 715 ceased to exist on or around March 1, 2007, the Hospitals were not, and are not, obligated to arbitrate the Acosta Grievance, and Local 715 lacks standing to enforce or confirm the Award.  Therefore the Court ORDERS that judgment  SHALL BE ENTERED against Local 715 and in favor of the Hospitals, Local 715's Petition shall be DISMISSED

10

SFCA_1425585.2

1   WITH PREJUDICE and the Arbitration Award is HEREBY VACATED.

2   **III.    THE HOSPITALS WERE AND ARE NOT OBLIGATED TO ARBITRATE WITH**
3   **UHW OR ITS REPRESENTATIVES AND UHW AND ITS REPRESENTATIVES**
4   **LACK STANDING TO ENFORCE OR CONFIRM THE AWARD**

5          Whether or not Local 715 continues to exist, the Hospitals were not, and are not,

6   obligated to arbitrate with UHW or UHW's representatives acting pursuant to the Servicing

7   Agreement because the Servicing Agreement is invalid.

8          The Court finds that the following facts are material and undisputed:

9   •      In 1998, the National Labor Relations Board ("NLRB" or the "Board") issued an order

10         (the "Certification") certifying Local 715 as the exclusive collective bargaining

11         representative of a unit of Hospital employees (the "Bargaining Unit") as set forth in the

12         Certification.  [Arnold Decl. Exh. A.]

13
    •      Thereafter, the Hospitals and Local 715 engaged in collective bargaining resulting in a
14
           series of collective bargaining agreements.  The current collective bargaining agreement
15
           (the "CBA") became effective on January 20, 2006, and is scheduled to expire on
16
           November 4, 2008.  [Arnold Decl. Exh. B.]
17

18  •      Article 1 of The CBA contains a "Recognition Clause" which states that, pursuant to the

19         Board's Certification, the Hospitals recognized Local 715 "as the sole and exclusive

20         representative for the purpose of collective bargaining" with respect to Bargaining Unit

21         employees.  [Arnold Decl. Exh. B.]

22
    •      Article 26 of the CBA contains a grievance and arbitration procedure through which
23
           alleged violations of the CBA may be challenged.  However, only Local 715 may appeal
24
           a grievance to arbitration.  [Arnold Decl. Exh. B.]
25

26  •      Between February 18 and February 20, 2006, Local 715 entered into a "Servicing

27         Agreement" with Service Employees International Union, United Healthcare Workers –

28
                                          11

SFCA_1425585.2

West ("UHW").  [Arnold Decl. ¶ 36 & Exh. CC; Inciardi Decl. Exh. EE.]

- The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility."  [Arnold Decl. Exh. CC.]

- The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the agreement, including initiating proceedings before the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals." [Arnold Decl. Exh. CC.]

-  The  Servicing Agreement was to be effective as of March 1, 2006.  [Arnold Decl. Exh. CC.]

- On February 28, 2006, Greg Pullman, then Local 715's Staff Director, informed Laurie Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an employee of UHW named Ella Hereth in connection with the settlement of grievances and unfair labor practice charges.  [Quintel Decl. ¶ 9.]

- Around the same time, another UHW employee named Rachel Deutsch told Ms. Quintel that UHW would be taking over representation for the Hospitals.  [Quintel Decl. ¶ 10.]

- Ms. Quintel sought clarification from Mr. Pullman, whereupon Mr. Pullman told Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day basis."  [Quintel Decl. ¶ 11-12 & Exh. B.]

- Between March and May, 2006, the functions that had formerly been carried out by Local 715 personnel were carried out exclusively by UHW employees.  UHW employees filed

12

SFCA_1425585.2

grievances on UHW stationery, some of which referred to Bargaining Unit members as "members" of UHW. [Quintel Decl. ¶ 15 & Exh. D.] Ms. Hereth sent a letter to Ms. Quintel instructing to "direct all SEIU correspondence" to UHW employees at UHW's San Francisco office. [Quintel Decl. ¶ 14 & Exh. C.] On May 22, 2006, Jocelyn Olick, a UHW employee and purported servicing agent under the Servicing Agreement, stated in an e-mail that "I and Ella Hereth do not work for SEIU 715. SEIU-UHW is doing the representation work here at Stanford Hospital." [Quintel Decl. ¶ 20 & Exh. H.] On the same day, Mr. Pullman stated in an e-mail that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San Francisco office are handling all representation matters for SEIU Local 715." [Quintel Decl. ¶ 20 & Exh. H.] Ms. Olick also purported to have authority to accept changes to the CBA. [Quintel Decl. ¶ 21 & Exh. I.]

- On or around March 28, 2006, W. Daniel Boone of the law firm Weinberg Roger & Rosenfeld, which historically represented Local 715, wrote a letter to Laurence R. Arnold, an attorney who represents the Hospitals, which referred to "United Healthcare Workers – West (formerly SEIU, Local 715)." [Arnold Decl. ¶ 26 & Exh. S.]

- In early April, 2006, UHW employee Phyllis Willett told Ms. Quintel that when the Hospitals remitted union dues, they needed to provide the social security numbers of the relevant employees to help UHW identify them. [Quintel Decl. ¶ 16.]

- Around April 17, 2006, Ms. Quintel received a letter from William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU United Healthcare Workers West" and requested that the Hospitals provide information pertaining to Bargaining Unit employees, and the dues deducted from their paychecks. [Quintel Decl. ¶ 17 & Exh. E.]

- In May and June, 2006, Hospitals informed Local 715 that they did not consent to any transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not

13

SFCA_1425585.2

deal with employees of UHW.  [Quintel Decl. ¶ 19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]

- In June, 2006, Hospitals requested information from Local 715 regarding the organization's status and the role of UHW.  [Arnold Decl. ¶ 32 & Exh. Z.]

- On June 9, 2006 the Service Employees International Union ("SEIU" or the "International") issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report").  The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan").  The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities . . . pursuant to servicing agreements."  [Inciardi Decl. Exh. T p. 16.]  The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed.  With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715.  [Inciardi Decl. Exh. T p. 40.]  The Joint Report also recommended that, "the affiliation of private healthcare units represented by Locals 727, 715, and 2028 should be changed to UHW as soon as feasible."  [Inciardi Decl. Exh. T p. 65.]

- On June 11, 2006, Andrew L. Stern, International President of SEIU, issued a memorandum to "Affected SEIU Local Unions in California" announcing that SEIU had decided to adopt the recommendations outlined in the Joint Report.  The memorandum confirmed that "Private Sector Hospital units currently represented by Locals 535, 707, 715, 2028, and 4988 will merge into UHW."  [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

- In mid-August, the Hospitals received copies of the Servicing Agreement in mid August and reviewed it.  [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.]

14

SFCA_1425585.2

The Hospitals concluded, based upon the evidence that Local 715 had abdicated its representative duties and assigned them to UHW, that the Servicing Agreement was invalid and rejected it.

- Local 715 was informed of the Hospitals' rejection of the Servicing Agreement on or around August 29, 2006, and was further informed that the Hospitals would not deal with employees of UHW acting pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 38 & Exh. EE.]

- In September, 2006, Bargaining Unit employees were asked to ratify the reorganization plan adopted by SEIU by means of a state-wide vote.  The balloting material distributed to Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers – West."  [Quintel Decl. ¶ 26-27 & Exh. M-N.]

- On January 2, 2007, International President Stern issued an "Order Of Reorganization" to various SEIU locals, including Local 715.  [Inciardi Decl. Exh. U.]  President Stern ordered that all workers represented by Local 715, with certain exceptions, be "reorganized into SEIU Local 521."  President Stern further ordered that "all . . . Stanford/Lucille (sic) Packard Hospital workers be, and are hereby, reorganized into SEIU Local UHW."  [Inciardi Decl. Exh. U.]  Such "reorganization" was to take place as soon as practicable.

- On January 31, 2007, Chief Shop Steward Robert W. Rutledge, stated in an e-mail that, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006."  [Quintel Decl. ¶ 28 & Exh. O.]  Copies of the e-mail were sent to Ms. Olick and UHW employee Kim Tavaglione, neither of whom objected to Mr. Rutledge's statement.

- At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his

15

SFCA_1425585.2

assertion that Local 715 no longer existed.  He also stated that Local 715 no longer represented employees at the Hospitals, and that they were now represented by UHW. [Quintel Decl. ¶ 29.]

•    In late January, Local 715 prominently posted a statement on its website, located at http://www.SEIU715.org, that "We are in the process of transitioning to our new local 521.  This web site will be taken down on Feb. 28.  On March 1, our new Local's web site www.seiu521.org will have your chapter pages and other information."  [Quintel Decl. ¶ 30 & Exh. P.]

•    Beginning on or around March 1, visitors to Local 715's website could no longer access the former site, but were automatically redirected to the website of Service Employees International Union, Local 521 ("Local 521"), located at http://www.SEIU521.org.  Local 521's website contained a prominent statement that  five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local."  [Quintel Decl. ¶ 32 & Exh. R.]  Another page referenced benefits available to "former SEIU Local 715 members."  [Quintel Decl. ¶ 32 & Exh. R.]

•    On or around March 5, 2007, Local 715's website contained the following statement: "Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local.  On January 2, 2007, our new local received its charter.  On March 1, 2007, the resources of all five locals were transferred to Local 521."  [Quintel Decl. ¶ 40 & Exh. X.]

•    As of March 2, 2007, UHW's website, located at http://SEIU-UHW.org, contained an assertion that UHW represented the Hospitals' employees.  [Quintel Decl. ¶ 34 & Exh. S.]  UHW has continued to claim to represent the Hospitals' employees on its website. [Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

•    The dues deduction authorization forms, by which the individual bargaining unit

16

SFCA_1425585.2

members authorized deduction and remittance of union dues, authorized remittance of dues specifically to Local 715, and to no other organization.  [Quintel Decl. ¶ 35 & Exh. T.]

- In fact, although it was not known to the Hospitals at the time, the actual recipient of the dues being remitted to "Local 715" was Local 521.  A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had been assigned to the SHC/LPCH Bargaining Unit).  [Arnold Decl. ¶ 57 & Exh. WW.]  This was the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for February, 2007, which was $21,949.35.  [Quintel Decl. ¶ 38 & Exh. V.]

- On March 2, 2007, the Hospitals informed "Local 715" that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues.  [Quintel Decl. ¶ 36 & Exh. U.]  The requested information was not provided, and after March 1, 2007, the Hospitals ceased remitting dues.  [Quintel Decl. ¶ 37.]  The Hospitals continued to deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank account established for that purpose, a procedure that continues to date.  [Quintel Decl. ¶ 37.]

- On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship."  [Inciardi Decl. Exh. Z.]  That order stated that, because of the Hospitals' "position" that Local 715 had ceased to exist, and the transfer of the bulk of Local 715's former members and resources to Local 521, SEIU was placing "Local 715" under trusteeship, removing its officers, and appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that the SEIU's reorganization plan remained in place and that the remaining members of

17

1    "Local 715" would be "united with other SEIU healthcare members in SEIU United

2    Healthcare Workers – West."  [Inciardi Decl. Exh. Z.]

3

4    •    Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of the trusteeship,

5         that the Servicing Agreement would "remain in full force and effect," and that UHW

6         employees would continue to "service" the Hospitals.  [Quintel Decl. ¶ 48 & Exh. FF.]

7    •    Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm

8         Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr.

9         Arnold confirmed this in a conversation with Ms. Chisholm followed by a confirming

10        letter.  [Arnold Decl. ¶ 40 & Exh. FF.]

11

12   •    To date, the Hospitals have not received any notification that the Altshuler Firm no

13        longer represents "Local 715."  [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]

14   •    Since the announcement of the Altshuler Firm's representation of "Local 715," the

15        Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting

16        to act on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49,

17        55 & 65 & Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration

18        hearing that was held after the appointment of the Altshuler Firm as counsel.  [Arnold

19        Decl. ¶ 46 & 49 & Exh. LL.]

20

21   •    Hospitals were aware that the Weinberg Firm has historically acted as counsel to UHW

22        and it had previously sent correspondence to the Hospitals representing UHW pursuant to

23        the Servicing Agreement.[Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals became

24        concerned that when the Weinberg Firm acted on behalf of "Local 715," it was actually

25        retained by UHW and acting under authority of the rejected Servicing Agreement.

26        However, when the Hospitals requested information from "Local 715" on this issue

27        "Local 715" and its purported attorneys either failed to respond or openly refused to

28        respond.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  The Hospitals concluded that the

18

SFCA_1425585.2

1    Weinberg Firm was, in fact, representing UHW, and that its appearances on "Local

2    715's" behalf were made under authority of the rejected Servicing Agreement.

3    Therefore, the Hospitals refused to participate in arbitration proceedings with Weinberg

4    attorneys absent assurances that the appearance was made directly on behalf of "Local

5    715" and not pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 53 & Exh. RR.]

6    Neither the Weinberg Firm nor the Altshuler Firm provided the Hospitals with the

7    requested assurance.

8

9        It has been recognized that, under the National Labor Relations Act, one union may use

10   agents or experts from another union to act on its behalf in formal labor negotiations.  *Goad*

11   *Company*, 333 NLRB 677, 679 (2001).  However, a union may not use the purported

12   appointment of agents to effectuate a *de facto* change of the bargaining representative, and under

13   such circumstances, the employer is under no obligation to deal with the purported agents.

14   *Goad, supra*, 333 NLRB at 680 (employer not obligated to deal with purported agent where

15   certified union "did not simply enlist the aid of an agent . . . it transferred its representational

16   duties and responsibilities.")  See also *Sherwood Ford, Inc*, 188 NLRB 131, 133-134 (1971)

17   (Board disregarded agency agreement between unions as "a device, subterfuge, or stratagem"

18   designed to accomplish a *de facto* change of the bargaining agent.).

19       The undisputed facts set forth above demonstrate that, notwithstanding the content of the

20   Servicing Agreement, in practice, "Local 715" and UHW have used the Servicing Agreement as

21   a "device, subterfuge, or stratagem" to, in effect, transfer representative status to UHW.  Rather

22   than serving as a mere agent, as called for in the Servicing Agreement, UHW has sought to

23   completely supplant Local 715 with respect to every aspect of collective bargaining, leaving

24   Local 715 as the representative in name only.  Given this, the Hospitals were not, and are not,

25   obligated to arbitrate or otherwise deal with employees and representatives of UHW, including

26   Weinberg Firm attorneys, acting pursuant to the invalid Servicing Agreement.  Furthermore

27   UHW and its representatives do not have standing to enforce or confirm the Award.  Thus, the

28   Court HEREBY ORDERS that judgment SHALL BE ENTERED in favor of the Hospitals,

19

SFCA_1425585.2

1  Local 715's Petition SHALL BE DISMISSED WITH PREJUDICE and the Arbitration Award is

2  HEREBY VACATED.

3  **IV.    THE ARBITRATOR'S AWARD IS INVALID**

4        Alternatively, judgment in favor of the Hospitals and against Local 715 is granted

5  because the Arbitrator's Award is invalid.

6        The Court finds that the following facts are material and undisputed:

7  •     In 1998, the National Labor Relations Board ("NLRB" or the "Board") issued an order

8        (the "Certification") certifying Local 715 as the exclusive collective bargaining

9        representative of a unit of Hospital employees (the "Bargaining Unit") as set forth in the

10       Certification.  [Arnold Decl. Exh. A.]

11

12 •     Thereafter, the Hospitals and Local 715 engaged in collective bargaining resulting in a

13       series of collective bargaining agreements.  The current collective bargaining agreement

14       (the "CBA") became effective on January 20, 2006, and is scheduled to expire on

15       November 4, 2008.  [Arnold Decl. Exh. B.]

16 •     Article 1 of The CBA contains a "Recognition Clause" which states that, pursuant to the

17       Board's Certification, the Hospitals recognized Local 715 "as the sole and exclusive

18       representative for the purpose of collective bargaining" with respect to Bargaining Unit

19       employees.  [Arnold Decl. Exh. B.]

20

21 •     Article 26 of the CBA contains a grievance and arbitration procedure through which

22       alleged violations of the CBA may be challenged.  However, only Local 715 may appeal

23       a grievance to arbitration.  [Arnold Decl. Exh. B.]  Article 26.7.8 states that arbitration

24       proceedings "will be closed unless the parties mutually agree otherwise in advance and in

25       writing."  [Arnold Decl. Exh. B.]

26 •     Between February 18 and February 20, 2006, Local 715 entered into a "Servicing

27       Agreement" with Service Employees International Union, United Healthcare Workers –

28

20

SFCA_1425585.2

West ("UHW").  [Arnold Decl. ¶ 36 & Exh. CC; Declaration of Scott P. Inciardi In

Support of Motions ("Inciardi Decl.") Exh. EE.]

•       The Servicing Agreement provided that UHW would provide certain "professional

services" to Local 715 at no cost, including "Representation in the grievance procedure

and at arbitration hearings," "Representation at labor-management meetings," and

"Assistance to members appearing before the National Labor Relations Board on behalf

of the Local 715 Chapter at the Stanford Facility."  [Arnold Decl. Exh. CC.]

•       The Servicing Agreement further provided that, Local 715 and UHW would take such

steps as were necessary to enforce the agreement, including initiating proceedings before

the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals."

[Arnold Decl. Exh. CC.]

•        The  Servicing Agreement was to be effective as of March 1, 2006.  [Arnold Decl. Exh.

CC.]

•       On February 28, 2006, Greg Pullman, then Local 715's Staff Director, informed Laurie

Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work

with an employee of UHW named Ella Hereth in connection with the settlement of

grievances and unfair labor practice charges.  [Quintel Decl. ¶ 9.]

•       Around the same time, another UHW employee named Rachel Deutsch told Ms. Quintel

that UHW would be taking over representation for the Hospitals.  [Quintel Decl. ¶ 10.]

•       Ms. Quintel sought clarification from Mr. Pullman, whereupon Mr. Pullman told Ms.

Quintel that "Local 715 represents the workers covered by our agreement" but that

"Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day

basis."  [Quintel Decl. ¶ 11-12 & Exh. B.]

•       Between March and May, 2006, the functions that had formerly been carried out by Local

21

715 personnel were carried out exclusively by UHW employees.  UHW employees filed grievances on UHW stationery, some of which referred to Bargaining Unit members as "members" of UHW.  [Quintel Decl. ¶ 15 & Exh. D.]  Ms. Hereth sent a letter to Ms. Quintel instructing to "direct all SEIU correspondence" to UHW employees at UHW's San Francisco office.  [Quintel Decl. ¶ 14 & Exh. C.]  On May 22, 2006, Jocelyn Olick, a UHW employee and purported servicing agent under the Servicing Agreement, stated in an e-mail that "I and Ella Hereth do not work for SEIU 715.  SEIU-UHW is doing the representation work here at Stanford Hospital."  [Quintel Decl. ¶ 20 & Exh. H.]  On the same day, Mr. Pullman stated in an e-mail that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San Francisco office are handling all representation matters for SEIU Local 715."  [Quintel Decl. ¶ 20 & Exh. H.]  Ms. Olick also purported to have authority to accept changes to the CBA.  [Quintel Decl. ¶ 21 & Exh. I.]

- On or around March 28, 2006, W. Daniel Boone of the law firm Weinberg Roger & Rosenfeld, which historically represented Local 715, wrote a letter to Laurence R. Arnold, an attorney who represents the Hospitals, which referred to "United Healthcare Workers – West (formerly SEIU, Local 715)."   [Arnold Decl. ¶ 26 & Exh. S.]

- In early April, 2006, UHW employee Phyllis Willett told Ms. Quintel that  when the Hospitals remitted union dues, they needed to provide the social security numbers of the relevant employees to help UHW identify them.  [Quintel Decl. ¶ 16.]

- Around April 17, 2006, Ms. Quintel received a letter from William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU United Healthcare Workers West" and requested that the Hospitals provide information pertaining to Bargaining Unit employees, and the dues deducted from their paychecks.  [Quintel Decl. ¶ 17 & Exh. E.]

- In May and June, 2006, Hospitals informed Local 715 that they did not consent to any

22

transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not deal with employees of UHW.  [Quintel Decl. ¶ 19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]

• In June, 2006, Hospitals requested information from Local 715 regarding the organization's status and the role of UHW.  [Arnold Decl. ¶ 32 & Exh. Z.]

• On June 9, 2006 the Service Employees International Union ("SEIU" or the "International") issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report").  The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan").  The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities . . . pursuant to servicing agreements."  [Inciardi Decl. Exh. T p. 16.]  The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed.  With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715.  [Inciardi Decl. Exh. T p. 40.]  The Joint Report also recommended that, "the affiliation of private healthcare units represented by Locals 727, 715, and 2028 should be changed to UHW as soon as feasible."  [Inciardi Decl. Exh. T p. 65.]

• On June 11, 2006, Andrew L. Stern, International President of SEIU, issued a memorandum to "Affected SEIU Local Unions in California" announcing that SEIU had decided to adopt the recommendations outlined in the Joint Report.  The memorandum confirmed that "Private Sector Hospital units currently represented by Locals 535, 707, 715, 2028, and 4988 will merge into UHW."  [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

• Hospitals received copies of the Servicing Agreement in mid August and reviewed it.

23

SFCA_1425585.2

[Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.]  The Hospitals concluded, based upon the evidence that Local 715 had abdicated its representative duties and assigned them to UHW, that the Servicing Agreement was invalid and rejected it.

- Local 715 was informed of the Hospitals' rejection of the Servicing Agreement on or around August 29, 2006, and was further informed that the Hospitals would not deal with employees of UHW acting pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 38 & Exh. EE.]

- In September, 2006, Bargaining Unit employees were asked to ratify the reorganization plan adopted by SEIU by means of a state-wide vote.  The balloting material distributed to Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers – West."  [Quintel Decl. ¶ 26-27 & Exh. M-N.]

- On January 2, 2007, International President Stern issued an "Order Of Reorganization" to various SEIU locals, including Local 715.  [Inciardi Decl. Exh. U.]  President Stern ordered that all workers represented by Local 715, with certain exceptions, be "reorganized into SEIU Local 521."  President Stern further ordered that "all . . . Stanford/Lucille (sic) Packard Hospital workers be, and are hereby, reorganized into SEIU Local UHW."  [Inciardi Decl. Exh. U.]  Such "reorganization" was to take place as soon as practicable.

- On January 31, 2007, Chief Shop Steward Robert W. Rutledge, stated in an e-mail that, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006."  [Quintel Decl. ¶ 28 & Exh. O.]  Copies of the e-mail were sent to Ms. Olick and UHW employee Kim Tavaglione, neither of whom objected to Mr. Rutledge's statement.

- At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his

24

assertion that Local 715 no longer existed.  He also stated that Local 715 no longer represented employees at the Hospitals, and that they were now represented by UHW. [Quintel Decl. ¶ 29.]

- In late January, Local 715 prominently posted a statement on its website, located at http://www.SEIU715.org, that "We are in the process of transitioning to our new local 521.  This web site will be taken down on Feb. 28.  On March 1, our new Local's web site www.seiu521.org will have your chapter pages and other information."  [Quintel Decl. ¶ 30 & Exh. P.]

- Beginning on or around March 1, visitors to Local 715's website could no longer access the former site, but were automatically redirected to the website of Service Employees International Union, Local 521 ("Local 521"), located at http://www.SEIU521.org.  Local 521's website contained a prominent statement that  five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local."  [Quintel Decl. ¶ 32 & Exh. R.]  Another page referenced benefits available to "former SEIU Local 715 members."  [Quintel Decl. ¶ 32 & Exh. R.]

- On or around March 5, 2007, Local 715's website contained the following statement: "Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local.  On January 2, 2007, our new local received its charter.  On March 1, 2007, the resources of all five locals were transferred to Local 521."  [Quintel Decl. ¶ 40 & Exh. X.]

- As of March 2, 2007, UHW's website, located at http://SEIU-UHW.org, contained an assertion that UHW represented the Hospitals' employees.  [Quintel Decl. ¶ 34 & Exh. S.]  UHW has continued to claim to represent the Hospitals' employees on its website. [Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

- The dues deduction authorization forms, by which the individual bargaining unit

25

SFCA_1425585.2

members authorized deduction and remittance of union dues, authorized remittance of dues specifically to Local 715, and to no other organization. [Quintel Decl. ¶ 35 & Exh. T.]

• In fact, although it was not known to the Hospitals at the time, the actual recipient of the dues being remitted to "Local 715" was Local 521. A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had been assigned to the SHC/LPCH Bargaining Unit). [Arnold Decl. ¶ 57 & Exh. WW.] This was the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for February, 2007, which was $21,949.35. [Quintel Decl. ¶ 38 & Exh. V.]

• On March 2, 2007, the Hospitals informed "Local 715" that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues. [Quintel Decl. ¶ 36 & Exh. U.] The requested information was not provided, and after March 1, 2007, the Hospitals ceased remitting dues. [Quintel Decl. ¶ 37.] The Hospitals continued to deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank account established for that purpose, a procedure that continues to date. [Quintel Decl. ¶ 37.]

• On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship." [Inciardi Decl. Exh. Z.] That order stated that, because of the Hospitals' "position" that Local 715 had ceased to exist, and the transfer of the bulk of Local 715's former members and resources to Local 521, SEIU was placing "Local 715" under trusteeship, removing its officers, and appointing Bruce W. ("Rusty") Smith as trustee. The order confirmed that the SEIU's reorganization plan remained in place and that the remaining members of

26

SFCA_1425585.2

"Local 715" would be "united with other SEIU healthcare members in SEIU United Healthcare Workers – West."  [Inciardi Decl. Exh. Z.]

• Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of the trusteeship, that the Servicing Agreement would "remain in full force and effect," and that UHW employees would continue to "service" the Hospitals.  [Quintel Decl. ¶ 48 & Exh. FF.]

• Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr. Arnold confirmed this in a conversation with Ms. Chisholm followed by a confirming letter.  [Arnold Decl. ¶ 40 & Exh. FF.]

• To date, the Hospitals have not received any notification that the Altshuler Firm no longer represents "Local 715."  [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]

• Since the announcement of the Altshuler Firm's representation of "Local 715," the Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting to act on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49, 55 & 65 & Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration hearing that was held after the appointment of the Altshuler Firm as counsel.  [Arnold Decl. ¶ 46 & 49 & Exh. LL.]

• The Hospitals were aware that the Weinberg Firm has historically acted as counsel to UHW and it had previously sent correspondence to the Hospitals representing UHW pursuant to the Servicing Agreement. [Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals became concerned that when the Weinberg Firm acted on behalf of "Local 715," it was actually retained by UHW and acting under authority of the rejected Servicing Agreement.  However, when the Hospitals requested information from "Local 715" on this issue "Local 715" and its purported attorneys either failed to respond or openly refused to respond.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  The Hospitals concluded

27

SFCA_1425585.2

that the Weinberg Firm was, in fact, representing UHW, and that its appearances on "Local 715's" behalf were made under authority of the rejected Servicing Agreement. Therefore, the Hospitals refused to participate in arbitration proceedings with Weinberg attorneys absent assurances that the appearance was made directly on behalf of "Local 715" and not pursuant to the Servicing Agreement. [Arnold Decl. ¶ 53 & Exh. RR.] Neither the Weinberg Firm nor the Altshuler Firm provided the Hospitals with the requested assurance.

• The Acosta Grievance was filed on or around March 17, 2007 and alleged that the Hospital terminated Mr. Acosta's employment in violation of the CBA. [Quintel Decl. ¶ 64 & Exh. RR.]

• Thomas A. Angelo (the "Arbitrator") was selected to arbitrate the matter. [Arnold Decl. ¶ 60 & Exh. ZZ.]

• On June 26, 2007, Mr. Arnold, having been informed of the Trustee's appointment of Ms. Chisholm as counsel, sent a letter to the Arbitrator informing him of "Local 715's" change in counsel. [Arnold Decl. ¶ 62 & Exh. BBB.] A copy of the letter was sent to Ms. Chisholm. [Id.]

• The arbitration hearing was scheduled for November 28, 2007.

• On November 7, 2007, Mr. Arnold informed Ms. Chisholm that the Hospitals intended to insist upon compliance with Article 26.7.8 of the CBA, which provided that arbitration proceedings were to be closed absent prior agreement by the parties. [Arnold Decl. ¶ 63 & Exh. CCC.] In his letter, Mr. Arnold also informed Ms. Chisholm that the Hospitals were not obligated, and would not agree, to engage in arbitration proceedings with UHW representatives, including Weinberg attorneys, acting pursuant to the invalid Servicing Agreement. [Arnold Decl. ¶ 63 & Exh. CCC.]

28

SFCA_1425585.2

1    •    Mr. Arnold appeared at the arbitration hearing on behalf of the Hospitals.  [Arnold Decl.

2         ¶ 66.]

3

4    •    Appearing purportedly on behalf of "Local 715" was W. Daniel Boone of the Weinberg

         Firm.  [Arnold Decl. ¶ 66.]

5

6    •    Mr. Boone was accompanied by Myriam Escamilla.  [Arnold Decl. ¶ 66.]

7

8    •    At the time of the Arbitration hearing, Ms. Escamilla was an employee of UHW.  [Arnold

         Decl. ¶ 66; Inciardi Decl. Exh. C22 .]

9

10   •    On the record, Mr. Arnold asked Mr. Boone to represent whether he was appearing on

11        behalf of Local 715 directly, or whether he was appearing pursuant to the Servicing

12        Agreement, which the Hospitals had rejected.  [Arnold Decl. ¶ 66 & Exh. FFF p. 17-18.]

13

14   •    Mr. Boone refused to provide the requested representation.  [Arnold Decl. Exh. FFF p.

15        26.]

16   •    Because Mr. Boone expressly refused to clarify the nature of his appearance, the

17        Hospitals refused to go forward with the arbitration.  [Arnold Decl. Exh. FFF p. 26.]  Mr.

18        Arnold also stated the Hospitals' position that the Arbitrator lacked the authority to

19        determine the validity of the Servicing Agreement, or to decide representational issues,

20        such as whether "Local 715" had validly transferred its representational rights to UHW,

21        permitting an attorney retained by UHW to appear at the arbitration hearing.  [Arnold

22        Decl. Exh. FFF p. 34-35.]

23

24   •    The Arbitrator agreed that he lacked the power to decide the validity of the Servicing

25        Agreement or other representational issues, and that such issues had not been submitted

26        to him by the parties.  [Arnold Decl. Exh. FFF p. 33-34.]

27   •    On November 30, 2007, the Arbitrator issued the Award.  In the Award, the Arbitrator

28

29

SFCA_1425585.2

confirmed that he lacked the power to decide representational issues, including the issue
of the validity of the Servicing Agreement.  [Arnold Decl. Exh. III p. 4 & 10.]

•      Although he acknowledged that he lacked the power to decide representational issues,
and that such issues were not submitted to him, the Arbitrator proceeded to decide that
Mr. Boone was validly representing "Local 715" and upheld the Acosta Grievance.
[Arnold Decl. Exh. III p. 14-19.]

The Court finds that the Award is invalid because in holding that Mr. Boone was validly
appearing on behalf of "Local 715" and upholding the Acosta Grievance, the Arbitrator
necessarily decided a representational issue, which was not arbitrable.  An arbitrator has
authority only to decide issues that are arbitrable in terms of the scope of issues made arbitrable
under the parties' agreement, and in terms of the issues submitted to the arbitrator for decision.
*AT&T Technologies, Inc. v. Communications Workers Of America*, 475 U.S. 643, 656 (1986).  It
is well-established that an arbitrator's power begins and ends with the contract, and he or she has
no authority to enforce or interpret federal labor laws.  *Doyle v. Raley's Incorporated*, 158 F.3d
1012, 1015 (9th Cir. 1998); *Phoenix Newspapers, Inc. v. Phoenix Mailers Union 752*, 989 F.2d
1077, 1079 FN1 (9th Cir. 1993).

The Court finds that the Award is invalid for the additional reason that the Arbitrator,
while conceding that the parties had not submitted representational issues, including the issue of
the validity of the Servicing Agreement to him, he nonetheless proceeded to decide those issues.
Where an arbitrator fails to confine his or her decision to the issues submitted by the arbitrating
parties, the award is invalid, and must be vacated.  *Sprewell v. Golden State Warriors*, 266 F.3d
979, 986 (9th Cir. 2001); *California Pacific Medical Center v. Service Employees.*

The Court further finds that the Arbitrator either ignored or disregarded the evidence on
the issue of the capacity in which Mr. Boone was appearing.  In particular, the Arbitrator ignored
that Mr. Boone specifically refused to state the basis on which he was appearing on behalf of
"Local 715."  He also found, without the benefit of any evidence, that Ms. Escamilla was a

SFCA_1425585.2

1    representative of Local 715.  [Arnold Decl. Exh. III p. 10.]

2          Finally, the Court finds that the Award is invalid for the additional reason that it conflicts

3    with the order of the NLRB certifying Local 715 as the exclusive bargaining representative of

4    the Bargaining Unit of Hospital employees.  The Board's Certification clearly states that Local

5    715 is the "exclusive collective bargaining representative" of the Bargaining Unit.  [Arnold Decl.

6    Exh. A.]  However, the Award gives effect to the Servicing Agreement, which is integral part of

7    an effort to invalidly transfer Local 715's rights and duties as the exclusive representative, as

8    stated in the Certification, to UHW.  Where an arbitrator's award is contrary to an order of the

9    NLRB, the award is invalid.  *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271,

10   1278-1279 (9th Cir. 1984); *A. Dariano & Sons, Inc. v. District Council Of Painters No. 33*, 869

11   F.2d 514 (9th Cir. 1989).

12

13         **IT IS ORDERED**, for the foregoing reasons, that the Hospitals' motion for summary

14   judgment or, in the alternative, summary adjudication of claims or defenses is **GRANTED** and

15   that judgment is HEREBY ENTERED against Local 715 and in favor of the Hospitals.  **IT IS**

16   **FURTHER ORDERED** that Local 715's Petition SHALL BE AND IS HEREBY DISMISSED

17   WITH PREJUDICE.  **IT IS FURTHER ORDERED** that the Arbitration Award is HEREBY

18   VACATED as invalid.

19   Date:

20

21

22                                              _____
                                                HON. JEREMY FOGEL
23                                              JUDGE OF THE UNITED STATES
                                                DISTRICT COURT FOR THE NORTHERN
24                                              DISTRICT OF CALIFORNIA

25

26

27

28
                                             31

SFCA_1425585.2